CHARLES MYERS V. STATE OF NEBRASKA.

FILED MAY 5, 1897.   No. 8932.

1. **Rape: EVIDENCE.** In a prosecution for rape, certain evidence, set out in the opinion, *held* to be irrelevant to the issues and prejudicial to the accused.

2. **Trial: CROSS-EXAMINATION: CONTRADICTIONS.** When a witness is cross-examined on a matter collateral to the issue he cannot, as to his answer, be contradicted by the party putting the question. (*Johnston v. Spencer*, 51 Neb., 198.)

ERROR to the district court for Seward county. Tried below before BATES, J. *Reversed.*

*R. S. Norval* and *George W. Lowley*, for plaintiff in error.

*C. J. Smyth, Attorney General*, and *Ed P. Smith, Deputy Attorney General*, for the state.

IRVINE, C.

Myers was convicted of rape upon the body of a girl within the statutory age of consent, and sentenced to imprisonment in the penitentiary for three years. The judgment must be reversed on account of errors in the admission of evidence.

The prosecutrix was, at the time of the alleged offense, somewhat more than seventeen years old. She was the adopted daughter of Mr. and Mrs. Richman, and dwelt with them on their farm in Seward county. The defendant, Myers, a youth of twenty, taught school in the neighborhood and boarded with the Richmans. The general nature of the testimony of the prosecutrix was that on the night of December 3, 1895, as she was about to retire, the defendant entered her room, and after some resistance on her part, accomplished his purpose; that thereafter until the 5th of April, 1896, he several times visited her room after she had retired, and on each occasion intercourse took place. The defendant took the stand on

his own behalf, and squarely and emphatically denied all the charges against him, and denied that there had ever been the slightest improper conduct between them. The prosecutrix's testimony was to the effect that on no occasion, except when he visited her room, had Myers ever, by word or act, exhibited the slightest undue familiarity or made any attempt in that direction; that even during those visits he used no words of endearment, and never kissed her or caressed her in any manner. The circumstances corroborating the prosecutrix's testimony were slight. They really went no further than to establish that the opportunity existed between these persons, and that they were so situated that her story might be true, and that she was not known to have any male associates whom she met under circumstances permitting improper conduct. The *corpus delicti* was proved beyond a doubt. The girl was under eighteen, and she gave birth to a child. This being established, the case called for close scrutiny of the evidence connecting the defendant with the crime, and the testimony of the only two persons having absolute knowledge was of such a character that it was perhaps unusually necessary to guard against the intrusion into the case of immaterial evidence which might improperly influence the jury.

One Phena Thams was called as a witness for the defense, and testified in chief that on one occasion she had observed a neighbor taking improper liberties with the prosecutrix. On cross-examination she was asked in regard to her acquaintance with one Miles Thompson, a negro. Then followed such questions as the following:

"Q. I will ask you if it is not a fact that you were discharged from the Windsor Hotel because you and he were found embracing each other?

"Q. Is it not a fact that Mr. France discharged you because you and Miles Thompson, the colored porter at the Windsor Hotel, had been found on several occasions, previous to your discharge, embracing each other and kissing each other?

"Q. I will ask you if Billy Royer did not, immediately preceding the time you left the Windsor Hotel, find you and one Miles Thompson, the colored porter there, embracing each other in one of the halls?

"Q. I will ask you if Tena Frahm did not find you and Miles Thompson, the colored porter at the Windsor Hotel, immediately before you left there, before your discharge, find you and Miles Thompson embracing each other and caressing each other?

"Q. Did not Emma France, immediately before your discharge from the Windsor Hotel, find you and Miles Thompson, the colored porter, embracing each other in one of the halls of the hotel?

"Q. I will ask you if you was not overtaken, or caught, in the Windsor Hotel, embracing Miles Thompson, immediately before your discharge from the hotel?

"Q. I will ask you if Frank Cross did not overtake you, or find you, and one Charles Burnham on the public highway, right north of Utica, embracing each other?

Each of these questions was objected to and the witness required to answer.   She denied each of the charges. This evidence was wholly collateral, tended in nowise to prove the issue and in no legal manner to impeach the witness; but the effect upon the jury of permitting these repeated insinuations of immoral conduct between the witness and a colored man must have been highly prejudicial, and the error was augmented by permitting the state to call Frank Cross in rebuttal and prove by him the substance of the charge contained in the last question. Even if the testimony was proper on cross-examination, it was collateral, and the state was bound by the witness's answers.   (*Johnston v. Spencer*, 51 Neb., 198.)

Mrs. Richman was called to testify on behalf of the state in chief, and among other things, she was asked regarding the prosecutrix: "Q. You may go ahead now and state what was the girl's demeanor towards you and Mr. Richman during the time she has lived, and whether she has been truthful or otherwise, whether she has been

obedient or otherwise, whether she has been given to vulgarity and obscenity, and what her general character has been since she has lived with you?" This was objected to, and the witness answered: "She has always been an affectionate child, a truthful child, and I never had any trouble with her any more than a mother would have with any child." Every portion of this question was highly objectionable. As a part of the state's case in chief it had no right to support the testimony of its witnesses by proof of their general truthful character, and if this could have been done, the rule is familiar that it must be by proof of general reputation, and not the witness' opinion as to her actual conduct. So, too, whether or not she had been an obedient child was wholly foreign to the case, and whether or not she was given to vulgarity or obscenity tended in no way to prove the defendant's guilt. Almost immediately afterwards the following question was answered over defendant's objection: Q. State whether she has been refined or coarse in her nature or conduct since she has been living with you?" The witness answered: "Refined." No comment is required to show the immateriality of this line of examination.

From certain questions asked the prosecutrix in cross-examination it appeared probable that the defense would undertake to show illicit relations about the time in controversy between the prosecutrix and a colored man living at the Richman house. By a series of questions, not necessary to repeat, but all of which were properly objected to, the state was permitted to prove, as a part of its case in chief, that this colored man was a man of good character, temperate, industrious, and not given to the use of obscene language. In many other particulars evidence was permitted entirely beyond the realm of facts in any way connected with the issue to be proved, and much of it was of such a character as that we have quoted manifestly tending to create a bias or prejudice in the minds of the jurors favorable to the prosecutrix or adverse to the defendant and his witnesses.

Grand Island & W. C. R. Co. v. Swinbank.

Without discussing other questions, the judgment must be reversed for the errors referred to.

REVERSED AND REMANDED.