EUGENE L. FERGUSON V. STATE OF NEBRASKA.

FILED SEPTEMBER 22, 1904.    No. 13,675.

1. **Cross-Examination of Witness.** "When a witness is cross-examined on a matter collateral to the issue he cannot, as to his answer, be subsequently contradicted by the party putting the question." *Johnston v. Spencer*, 51 Neb. 198.

2. ———: COLLATERAL FACTS: "The test of whether a fact inquired of in cross-examination is collateral is, would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea." *Johnston v. Spencer*, 51 Neb. 198.

3. **Accused as Witness.** In a criminal action, when an accused takes the witness stand in his own behalf, he is put in the position of an ordinary witness and subject to the rules governing the usual cross-examination.

4. ———: CREDIBILITY. The credibility of such a witness is to be determined and tested by the same principles that are applicable alike to all witnesses who testify in a case.

ERROR to the district court for Clay county: LESLIE G. HURD, JUDGE. *Reversed.*

*William M. Clark*, for plaintiff in error.

*Frank N. Prout, Attorney General*, and *Norris Brown*, *contra*.

HOLCOMB, C. J.

An information was filed in the district court for Clay county against the defendant, who appears in this court as plaintiff in error, consisting of two counts; the first charging him with a night-time burglary of a store building, with the intent to steal and with the stealing of certain property from the building alleged to have been burglarized, of a certain description and value as set forth in the information. In the second count, the defendant is charged with having received the property thus alleged to have been stolen, knowing the same to have been stolen. A trial upon the issue raised by a plea of not guilty resulted in a verdict in favor of the defendant on the first count and finding him guilty on the second. The burglary and larceny alleged were located in the town of Harvard in said county.

Several errors are complained of but we shall content ourselves with the discussion and consideration of one only; deeming a more extended review of the record unnecessary and unprofitable.

The defendant was a witness in his own behalf. In giving his testimony during his examination in chief, it developed that, at or about the time of the alleged crime, he was engaged in selling a patent self-wringing mop, the business being conducted by canvassing the different towns and homes throughout the county where the offense was alleged to have been committed. On cross-examination, the defendant was asked if he had not, at the time of the alleged offense, been engaged in other than the mop business and answered that he had sold some other things. On further cross-examination, it was developed that the witness had sold as a "side line," as he termed it, cream barom-

eters, and a few ladies' furs. He was then asked where he obtained these latter mentioned articles which he had sold and answered that he had received them from a brother at Pleasant Hill, Missouri. He was then asked if he had not sold one of the furs to a Mrs. Gordon residing in Clay county where the offense was alleged to have been committed, and answered that possibly he had. This is the substance of the cross-examination regarding the point referred to. After the defendant had rested, the prosecution was permitted over the defendant's objection to prove by the Mrs. Gordon mentioned, that she had purchased a fur collarette from the accused and that, at the time of the purchase, it had a paper tag attached showing the cost and selling price such as is used by merchants generally. The prosecution was then permitted to prove further by one Kemp, who was in the mercantile business at Fairmont, Nebraska, that the collarette purchased by Mrs. Gordon from the defendant was or had been a part of his stock of merchandise, and that the tag which was introduced in evidence was one used by him in his business, and the marks thereon were in his handwriting. This is the substance of the evidence permitted to be introduced by the state over defendant's objection, for the purpose, it seems, of contradicting his statements as to where he had obtained the furs he had testified to having and selling, and of impeaching his credibility as a witness. Touching this feature of the case, the court instructed the jury when the case was submitted to them for consideration as follows:

"The testimony that has been offered in this case with reference to other property in the possession of the defendant, other than that charged to have been feloniously taken from the Higgins Hardware Company, is to be considered by you for no other purpose and as having no other bearing upon your conclusions in this case save and except as affecting the credibility of the defendant E. L. Ferguson as a witness in his own behalf." In the twelfth instruction, among other things, it is further said:

"The credit of a witness depends largely upon two

things; that is, first, his ability to know what occurred, and his disposition for telling the truth."

It is earnestly urged on the part of the defendant, that error was committed to his prejudice by the admission of the impeaching testimony to which reference has been made, and the giving of the instruction which we have quoted at length. We are of the opinion that the evidence objected to, and the instruction complained of, both of which are related and may be considered together, do not conform to the principles governing the competency and admissibility of evidence, and was error prejudicial to the substantial rights of the defendant. While no evidence appears in the record tending to show that the furs which the defendant had been selling, or the one sold to Mrs. Gordon which was introduced in evidence, had been stolen, yet one can hardly escape the conviction from a reading of the record, notwithstanding the court's instruction, that the prosecution not only sought to show that the defendant had falsified in stating he had received these articles from his brother in Missouri, but also that he had come into possession of them by some questionable method. We may assume, however, that the instruction quoted limiting the scope of the evidence to the defendant's credibility as a witness, removed objections otherwise, and yet it is manifest that the controversy regarding where the defendant obtained the furs he was selling while prosecuting his other business was a collateral matter wholly immaterial to the real issue to be tried in the case. If that were an issue, then, in all fairness, the accused should have had an opportunity to procure the testimony of his brother in Missouri and probably other witnesses, to establish the truth of his version as to where he obtained these articles; and this but illustrates the wisdom of adhering to the issues fairly raised by the charge in the information and the plea of not guilty thereof. If an issue might be raised as to where the furs were obtained, a like issue might also be raised regarding where he obtained his cream barometers and his patent mop sticks, and by these side excursions

26

sight would be altogether lost of the question of his guilt of the crime charged in the information. Such inquiries into collateral matters would raise such a multiplicity of issues as to render litigation interminable, and could but have the effect of confusing the jury, who are the triers of fact, to such an extent as to prevent a fair and intelligent verdict on the real issues of fact in many of the cases submitted to them. Whether the defendant obtained the fur collarette from his brother in Missouri, or whether it was a part of the stock of merchandise of the witness Kemp, and secured by some undisclosed means from him, would in nowise throw any light upon the question of his having received the stolen property alleged in the information, knowing it to have been stolen. Whether he told the truth as to where he obtained these articles would, in a sense, affect his credibility as a witness, but not in a legal sense unless it was regarding a matter material to the main issue and to the facts which it is permissible to prove in establishing that issue. In *Johnston v. Spencer*, 51 Neb. 198, the rule is stated thus:

"When a witness is cross-examined on a matter collateral to the issue he cannot, as to his answer, be subsequently contradicted by the party putting the question." In the same case it is held that "The test of whether a fact inquired of in cross-examination is collateral is, would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea." See also *Davis v. State*, 51 Neb. 301, 340; *Myers v. State*, 51 Neb. 517, and *Zimmerman v. Kearney County Bank*, 57 Neb. 800. In an early case—*Smith v. State*, 5 Neb. 181—it is ruled that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue merely for the purpose of contradicting him by other evidence if he should deny it, thereby to discredit his testimony. Stated another way, the rule is that, when a party on cross-examination asks a witness an immaterial or irrelevant question, he is concluded by the answer and will not be permitted to call a witness to contradict it. *McDuffie v. Bentley*, 27 Neb. 380.

The accused when he took the witness stand in his own behalf put himself in the position of an ordinary witness and was subject to the rules governing the usual cross-examination. His credibility as a witness was to be determined and tested by the same principles that are applicable alike to all witnesses who testify in a case. The rule seems to be universal to the effect that self-contradiction of a witness can be established by direct testimony of an opposite character only when the statements to be contradicted relate to a material fact in issue in the trial of the particular case. This is not saying that in the cross-examination itself a witness may not be interrogated as to facts or statements upon collateral matters, but only that his denial or his testimony in relation to such collateral matters will furnish no foundation for further testimony of an impeaching character on the point, unless the testimony sought to be impeached relates to facts and statements which are material to the issues. Applying the principles deducible from the authorities above cited to the facts as disclosed by the record in the case at bar, it becomes apparent that the method adopted by the prosecution and permitted by the court over the defendant's objections to impeach his credibility as a witness does not find support or sanction under the rules of evidence governing such questions, and it goes without saying that if these principles have been violated in this respect that the error committed was highly prejudicial to the defendant and calls for a reversal of the sentence of imprisonment pronounced against him on the verdict of guilty returned by the jury. The judgment is therefore reversed and the cause remanded for a new trial.

REVERSED.