## DANIEL C. CALLAHAN v. STATE OF NEBRASKA.

### FILED JANUARY 23, 1909.   No. 15,688.

1. **Unlawful Disinterment: EVIDENCE.** In a prosecution against the superintendent of a cemetery for unlawfully assisting, inciting and procuring another to disinter human remains, where the evidence is that the accused had no knowledge of the disinterment, and the state relies upon general instructions to a person employed as a grave digger as constituting the inciting and assisting act, instructions in another and a particular instance are not sufficient to support a conviction.

2. ——: ——. Evidence set forth in the opinion *held* not to constitute such instructions to a laborer as to warrant a conviction in a case where it is shown that no knowledge of. the disinterment was had by the superintendent until some time after the act had been performed.

3. **Witnesses: CROSS-EXAMINATION.** Cross-examination should be restricted to matters covered by the examination in chief.

4. **Criminal Law: INSTRUCTIONS: REVIEW.** Under the evidence set forth in the opinion, *held* error to submit the question to the jury as to whether the instructions given by the defendant to the laborer in the particular instance constituted a rule of action for future instances.

ERROR to the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed.*

*Weaver & Giller* and *Hall & Stout*, for plaintiff in error.

*William T. Thompson, Attorney General*, and *Grant G. Martin, contra.*

LETTON, J.

Patrick Callahan the plaintiff in error, was convicted of unlawfully and feloniously assisting, inciting and procuring one Clark to open a grave and dig up, disinter and remove from their place of deposit and burial the remains of the dead body of one ——— (name unknown), deceased, in January, 1905, without the knowledge and consent of the relatives or intimate. friends of the deceased, and without lawful authority. Callahan was the superintendent of Prospect Hill Cemetery in the city of Omaha. This cemetery had been in existence for many years, and Callahan became its superintendent in 1890. The cemetery association was incorporated in 1892. Prior to the incorporation the cemetery was uninclosed, and, while interment had been made for many years prior to this time in and about the cemetery grounds, no records had been kept of the former burials, and many graves were unmarked and undistinguishable from the surrounding ground. When the corporation was formed a large number of iron markers were ordered by the association, and were placed by the superintendent at the head of each discernible grave, and thereafter records were kept by the association of each lot sold and of the location of each grave thereon. In 1905 one James C. Clark was employed as a grave digger by Mr. Callahan. Clark testifies that in January of that year, while he was digging a grave, he came upon a coffin inclosing the remains of a woman; that the coffin and remains were decayed and decomposed to such an extent that of the mortal remains the skeleton alone was left; that he removed the pieces of the skeleton, and laid them by the edge of the grave until he had dug the same to the required depth, when he replaced these remains in the bottom of the grave and covered them with earth. A number of shocking and repulsive details of his doings are given by the witness, and also by two members of his family who were present at the time. The evidence shows that at the place where Clark was digging the

grave there was no indication that the ground had ever been disturbed, and that neither he nor Callahan knew that there was or ever had been an interment at that place. The evidence also shows that Callahan had no knowledge that any remains had been disinterred or disturbed by the grave digger until a long time afterwards. The state bases its case, therefore, upon the proposition that prior to this time Callahan as superintendent had given Clark certain general instructions as to what he should do in the event that, while digging a grave, he should come upon human remains, that what was done in this instance was done in compliance with the general instructions or rule of action so laid down, and that, since Callahan gave such instructions he unlawfully aided, incited and procured Clark to disinter the remains and thereby committed the crime inhibited by the statute. Conceding the state's contention that general directions may render one giving them guilty of a specific crime, it will be seen, therefore, that Callahan's guilt under these circumstances rests entirely upon the proposition that his general instructions to Clark directed him to do the acts complained of, or, in other words, that Clark's unlawful acts were clearly within the scope of Callahan's directions. To determine this we must examine and scrutinize the evidence. Clark's testimony on this point is as follows: "Q. From whom did you have the instructions? A. From Mr. Callahan. Q. What were those instructions? A. The first one I went down on I said, when I got to the box—I went down to the office and talked to Mr. Callahan about that. He told me when I come to them to take them out nicely and lay them on the bank, and when I got the grave done down to where I wanted it, to dig a hole in the bottom and put those remains all back and cover them over nicely. Q. That was when you first encountered? A. Yes, sir; that was the first one I struck. Q. What did he say with reference to what should be your conduct whenever you met with that sort of an obstruction? A. He didn't give me any other orders. I went

right ahead with my work and asked him no more questions." This evidence was not as to the grave the desecration of which is charged but refers to another grave which Clark dug, in which remains were found. On cross-examination he testifies: "Q. You say, then, you had worked up there a day before you came across some bones, or some remains? A. Yes, sir. Q. And you went to see Callahan at the office? A. Yes, sir. Q. And you asked him what was done in a case of that kind? A. Yes, sir. Q. And he told you that orders were to simply take those bones out, those remains, and go on with your grave, and then put them back in? A. He didn't exactly speak it in that way, but he meant it in that way from the way he talked. He told me in a case of that kind we took them out and put them in the bottom of the grave again and covered them up. Q. You were speaking about this particular grave you had then? A. The first one I went into; yes, sir. Q. You were talking about what to do in that particular instance? A. Yes, sir." He further testified that Callahan knew nothing about this act with which he is charged with inciting until some time after it had been done.

The testimony above set forth contains all the instructions given to Clark by Callahan, according to Clark's own testimony. This is all there is in the record to sustain the allegations of the information as to Callahan's aiding, inciting, assisting or encouraging Clark to perform the act charged. At the close of the state's case, defendant moved for an instructed verdict, which motion was overruled and exception taken. We are of the opinion that the motion should have been sustained. Viewed in the most favorable light for the state, Clark's testimony falls short of establishing the fact that any general instructions were ever given to him by Callahan which authorized the removal and reinterment of the remains found in the excavation or the revolting acts described by him. It was, no doubt, necessary to admit the repulsive details of the act in evidence in order to establish that

the substance of the principal crime had been committed, so that evidence of the procurement or inciting of the act by Callahan might be introduced. The nature of the testimony was such as to shock the minds of all normally constituted persons, and it was liable to excite hostility and prejudice in the minds of the jurors toward any person accused of being guilty of such acts or of their procurement. There was the more reason, therefore, that the evidence by which it was sought to establish the connection of the accused with the principal act should be closely scrutinized; and, if it failed to establish such connection, the case should not have been permitted to go to the jury. We are of the opinion that Clark's evidence failed to establish that Callahan aided, assisted, incited or procured Clark to disinter the remains of the unknown person as charged in the information.

According to the testimony introduced upon the part of the defendant, before Callahan was permitted to open a grave for the purpose of interment or for the removal of a body previously interred, it was necessary for him to obtain a permit from the office of the secretary of the cemetery association, and also one from the board of health. He denies that he ever gave any general instructions with reference to the disinterment or reinterment of remains found in digging graves, but says that, upon one occasion when such an incident occurred, he brought Judge Baldwin, who was then the president of the cemetery association, to the grave, and that Baldwin in his presence gave instructions to a grave digger as to the particular instance. He testifies that he is not able to recall which grave digger it was and whose remains were being interred. He denies specifically giving any such instructions as Clark recites, either to Clark or to any other person, and swears that he knew nothing about this particular exhumation until he was charged with it in the police court about three years after the time that Clark disturbed the remains. Upon cross-examination the accused was asked whether after he heard Judge Baldwin's

instructions he pursued that course wherever he encountered the same conditions. Objection was made to this and subsequent questions of this nature, which were overruled, and the witness was required to answer as to his actions in that regard. We think that the overruling of these objections was erroneous. The defendant was upon trial for inciting Clark to disinter the remains of an unknown person in January, 1905. The state was only entitled to cross-examine upon the facts testified to by Callahan bearing upon this charge, and it was prejudicial error to compel the witness to answer a question relating to other acts of like nature as to which he had not been examined in chief, of which he was not accused, and the tendency of which question might be and probably was to arouse a prejudice against the defendant.

Complaint is made of the submission to the jury by the court in its instructions of the question whether the directions given by Callahan to Clark formed "a rule of action in future instances." From a consideration of the testimony, we think this criticism is well founded, and that there is no actual proof that any instruction given by Callahan was intended as a rule of action for Clark to follow in future instances. It is true Clark says that he acted upon this theory, but this is not enough. We cannot sustain a conviction upon mere inference or suspicion; the inciting act must be proved, and this is especially true where proof of knowledge by the accused of the wrongful act of the alleged agent is entirely wanting.

While we cannot sustain this conviction, we think enough has been shown in the case to justify the belief that the authorities in charge of Prospect Hill Cemetery have not exercised the careful supervision and control over its employees which is necessary where new burials are made in an old cemetery. The statute is designed to protect the last resting place of the dead, and graves should not be disturbed unless the case falls within the exceptions provided for by the statute. It is very probable that this prosecution may serve a useful purpose by

ending a careless and unlawful practice and abuse. A number of other questions are raised in the briefs, but in the view we take of the case it is unnecessary to consider them.

For the errors pointed out, the judgment of the district court is

REVERSED.

ROSE, J., not sitting.