CHARLES S. EASTON ET AL., APPELLEES, V. SNYDER-TRIMBLE COMPANY, APPELLANT.

FILED JUNE 16, 1913. No. 17,270.

1. **Witnesses:** CROSS-EXAMINATION. "The cross-examination of a witness should be restricted to the facts and circumstances drawn out on his direct examination. If it is desired to examine the witness upon other matters, the party desiring such examination must make the witness his own, and call him as such." *Davis v. Neligh*, 7 Neb. 84.

2. **Contracts:** PAROL MODIFICATION: CONSIDERATION. "While executory and before a breach, the terms of a written contract may be changed by a subsequent parol agreement; and such subsequent agreement requires no new consideration." *Bowman v. Wright*, 65 Neb. 661.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

*De Bord, Fradenburg & Van Orsdel*, for appellant.

*C. J. Garlow* and *Walter S. Stillman*, contra.

LETTON, J.

Plaintiffs seek to recover from defendant upon an alleged oral contract the price of 525 barrels of apples at $2.50 a barrel, which it is alleged were sold and delivered

to them under the contract.  Defendant's answer denied the existence of an oral contract, but admitted the purchase of 1,600 barrels of apples by a written contract under which 524 barrels had been delivered and accepted.  It also, by way of counterclaim, alleged that defendant had purchased 1,600 barrels of apples; that the apples delivered were of the value of $1,310; that, on account of the failure of plaintiffs to deliver the apples purchased according to contract, the defendant lost the difference between the contract price and the market value of the apples.  It also alleged that the plaintiffs were indebted for the expenses and wages of the men furnished by it at the plaintiffs' request in the sum of $88.90.  It prays judgment for the difference between the amount due the plaintiffs and its loss of profits, and expenses amounting to $582.65.  By reply the plaintiffs admitted the execution of the written contract, but alleged that it was afterwards orally waived by the parties.  Plaintiffs had judgment, and defendant appeals.

The defendant is a wholesale fruit merchant in Omaha. The plaintiffs were engaged in 1909 in buying apples from the owners of orchards, picking and sorting the same, and selling them to dealers.  On September 18, 1909, plaintiffs, by Mr. Easton, entered into a written contract with the defendant to sell it 1,600 barrels of apples, "800 barrels hand-picked Jonathans, 800 barrels Ben Davis, Winesaps and Genetons, to be barreled and loaded on board cars at Bellwood to be shipped to Omaha, bill of lading attached." On October 4, 1909, plaintiffs shipped a car-load of Jonathan apples under this contract.  Easton sent the bill of lading to defendant by mail, and in the letter inclosing the same intimated plaintiffs would be unable to furnish the full amount of Jonathans, saying also that he "would be able to fill the whole contract with other varieties * * * and I may be able to send you in another car of Jonathans." Some doubt was also expressed as to the car shipped coming up to the standard, and he requested to be notified if they were not accepted.  The car was received in Omaha,

October 9, 1909, but the apples were rejected by the defend-ant as not coming up to contract grade. Easton and Trimble had a conversation over the telephone with regard to this car, and at Easton's request Trimble released it and it was billed out by Easton to Illinois. Easton testifies that in this conversation he told Trimble that he had better come to Bellwood and see further about the shipment of apples before any more were shipped; that Trimble went to Bell-wood the next day, October 9, and went with him through the orchard where the apples were being picked; that that evening Easton accompanied Trimble to Columbus on the train, and that while on the way Easton objected to ship-ping any more apples; that Trimble agreed that plaintiffs need not ship any more, but said, "I would like to have the apples in this orchard. * * * I am buy'ng apples 25 cents per bushel cheaper in Omaha today than I am paying you for these, but these being an extra quality of apples why I will let the price remain and take the apples from this orchard here;" that it was further agreed that Trimble was to furnish a man at $3 a day to oversee the packing of the apples, and that the apples were to be paid for as shipped. He testifies further that on Monday, October 11, he went to Illinois, and returned on the evening of October 17, when he found that Trimble and two of his employees were at Bellwood packing and shipping apples.

On the other hand, Trimble, while admitting he had a conversation with Easton on the train, says it was after the apples were shipped, and positively denies any modi-fication, waiver or abandonment of the contract in this conversation. He says that Easton then said something about thinking he would not be able to fill the contract, but that he told him "the contract was for so many apples, and that if he didn't have them he could buy them and fur-nish them to the Snyder-Trimble Company."

There is a good deal of inconsistency in the testimony as to the dates of the visits of Trimble and Easton to the orchard, and as to the time of the conversations on the train, whether before or after the apples were picked, but

these matters are not essential to the consideration of the points presented for review.

The plaintiffs' right to recover in this case depends upon whether the provisions of the written contract, while still executory, were superseded and set aside by mutual agreement and an oral contract entered into for the sale of apples in a specific orchard. If the written contract was not thus set aside, then the rights and liabilities of the parties must be measured by its terms.

The defendant complains that the court erred in refusing to allow it to show on cross-examination of Easton that Mr. Garlow was authorized to conduct a correspondence on behalf of Easton & Bennett with Snyder & Trimble and their attorneys, and in excluding this correspondence and testimony explanatory thereof. After Easton had testified to having received a letter from defendant dated October 28, 1909, stating defendant was deferring payment on the apples shipped until they heard from Easton & Bennett regarding the delivery of the remainder bought under the contract, a question on cross-examination as to his knowledge that his counsel, Mr. Garlow, was carrying on a correspondence with defendant with regard to the apples was excluded on the objection that it was improper cross-examination and its purpose was to compel the divulgence of a privileged communication between attorney and client. This was not proper cross-examination, having no relation to facts brought out in chief. An offer to prove Garlow's authority was also excluded. Mr. Garlow was called as a witness by the defendant. A letter was shown to him which was written by him to the Snyder-Trimble Company on November 1, 1909. The witness testified that he was the attorney for plaintiffs in relation to the controversy with Snyder-Trimble Company, that he had seen a copy of the written contract, dated September 18, 1909, at the time he wrote the letter. The letter is as follows: "Nov. 1, 1909. Messrs. Snyder-Trimble Co., Omaha, Nebraska. Dear Sirs: Messrs. Easton & Bennett of Cambridge, Nebraska, have placed in my hands a claim against

you for adjustment of 525 barrels of apples at $2.50, making $1,312.50. I also have copy of contract and statement of the facts regarding the deal. I am advised that you are long in default in payment so please remit to me at once, and oblige. Yours truly, C. J. Garlow." Garlow was then asked whether, in writing this letter of November 1, he therein referred to the written contract of September 18. The plaintiffs objected to this, and the objection was sustained. This letter was offered in evidence, but it was also objected "that it divulges a confidential relation existing between client and counsel, * * * for the further reason that any communications had between counsel regarding any matter in dispute cannot be binding upon the clients, and is improper and incompetent." The objection was sustained. The witness was then asked whether he received an answer from Snyder-Trimble Company, or any one representing them, to the letter of November 1. The witness was then shown a series of letters from him to Baldrige, De Bord & Fradenburg, defendant's attorneys, and letters from them in reply in relation to the controversy, and he was then asked to identify the same; but, upon objections, he was not required to answer, and the letters were excluded. If the letters had been written by the plaintiffs themselves, they were probably admissible as tending to show an attitude somewhat inconsistent with the hypothesis of the apples having been sold under an oral contract for the contents of one orchard, but the question of admissibility of the letters depends upon their materiality and upon how far the statement or declarations of an agent for the collection of money with respect to the past transaction out of which the liability is claimed to have arisen are binding upon his principals.

In *Saunders v. McCarthy,* 8 Allen (Mass.) 42, the attorney for the plaintiff made certain statements as to the facts in the case against his client's interest. This evidence was held properly excluded, the court saying: "The admissions in this case were mere matters of conversation, and, though they related to the facts in controversy, they

cannot be received in evidence against the plaintiff. The attorney was not the agent of his client to make such admissions. 1 Greenleaf, Evidence (16th ed.), sec. 186. If they had been in writing they would not have been admissible." This is the general rule. *Underwood v. Hart,* 23 Vt. 120, 129; Jones, Evidence (2d ed.) sec. 255; *People v. Vernon,* 35 Cal. 49, 95 Am. Dec. 49.

The contents of the first letter are not so inconsistent with the claim of plaintiffs as to make it material to the controversy. The statement, "I also have copy of contract," is qualified by the further statement, "and statements of the facts regarding the deal." If the written contract alone was the basis of the claim, there was no necessity for any "statements of the facts regarding the deal." The language used is consistent with the idea that the written contract originated and the oral contract terminated the transaction between the parties. It might have been as well to have allowed the letter to go to the jury, but we cannot say its exclusion was prejudicially erroneous. The other letters excluded were between the attorneys for the respective parties, and were in part negotiations for a settlement. We think they were also properly excluded.

It is next argued that, there being no consideration for the abrogation of the written contract, it is still in full force and effect. In *Bowman v. Wright,* 65 Neb. 661, we held: "While executory and before a breach, the terms of a written contract may be changed by a subsequent parol agreement; and such subsequent agreement requires no new consideration." We adhere to this view.

While it is not improbable that the jury reached the wrong conclusion on the facts, there is enough evidence to uphold the verdict, and the judgment of the district court must be, and is, affirmed. Other points are presented, but we find no error which we consider affected the substantial rights of the defendant.

The judgment of the district court is      AFFIRMED.

BARNES, FAWCETT and HAMER, JJ., not sitting.