HENRIETTA OWENS, ADMINISTRATRIX, APPELLEE, V. OMAHA
& COUNCIL BLUFFS STREET RAILWAY COMPANY,
APPELLANT.

FILED FEBRUARY 19, 1916. No. 18505.

1. Witnesses: IMPEACHMENT: COLLATERAL MATTER. A witness cannot
be cross-examined as to collateral matters not material to the
issue, for the purpose of subsequently contradicting or impeaching
him.

2. ————: CROSS-EXAMINATION. A party should not be permitted to
cross-examine a witness as to matters outside of the scope of his
direct examination.

3. Instructions examined and found to contain no reversible error,
and those requested were properly refused.

APPEAL from the district court for Douglas county:
GEORGE A. DAY, JUDGE. Affirmed.

John L. Webster, W. J. Connell and William Ross King,
for appellant.

James C. Kinsler, contra.

BARNES, J.

Plaintiff's intestate, John S. Owens, was killed by being
knocked down and partly run over by a street car at the
corner of Fortieth and Hamilton streets, in the city of
Omaha. Plaintiff was appointed administratrix of the es-
state, and brought an action for damages against the de-
fendant, the Omaha & Council Bluffs Street Railway Com-
pany. A trial had in the district court for Douglas county
resulted in a verdict for the plaintiff, and the court ren-
dered a judgment on the verdict. The defendant has
brought the case to this court by appeal.

The plaintiff alleged in her amended petition that the
car was wrongfully and negligently propelled backwards
against her intestate and caused him to be thrown, with
great force and violence, to the pavement of the street and

across the east rail of defendant's street car track, and that he was run upon by the street car of the defendant, and was thereby so seriously bruised and injured that he instantly died as a result of the said injuries.

The defendant filed an answer, alleging, as an excuse for backing up its car, that it was necessary to do this in order to avoid a collision with the east and south-bound car, which, it alleged, had the right of way around the inside of the curve at Fortieth and Hamilton streets. It denied that Owens, when he alighted from defendant's car in the vicinity of Fortieth and Hamilton streets, started to go around the street car to the drug store at the corner of said streets, as alleged in the petition, and averred that he, when he alighted from the car, started to go to his home, in the natural course of which he would have remained on the east side of the car; that the motorman and conductor in charge of the car did not know, and did not have reason to anticipate, that Owens intended to, or would, attempt to go behind the car from which he had alighted. The answer also averred that the injuries to the defendant's intestate were the direct result of his own wilfulness, negligence and carelessness in departing from a place of safety in the street and taking hold of the rear end of the car moving backwards, and in attempting to go behind the street car. Each and all of the averments of negligence charged against defendant were also denied. The reply was a general denial of the affirmative allegations of the answer.

The facts established by the record may be briefly stated as follows: Plaintiff's intestate boarded the car by which he was killed at Twenty-fourth and Cuming streets, in the city of Omaha. The car proceeded westward on the last-named street until it reached Fortieth street, where it turned north on that street, and proceeded as far as Hamilton street, at which point the street car tracks turn west on the street last named. The car was on the east tracks and when it arrived at Hamilton street it ran into the curve about one-third of the distance, being still headed to

the north. The motorman saw a car coming east on Ham-
ilton street to take the curve to Fortieth street. He imme-
diately brought his car to a full stop, and Owens got off
from the back steps and started around behind the car
toward a drug store on the west side of the street. The
motorman backed the car, and Owens was struck and
knocked down, the car passing partly over him. He was
instantly killed.

Defendant admitted that the crucial and important point
in the case was whether Owens was on the street car track
to the rear of the car at the time when it started back-
wards. If so, it would create a case of liability. But it
alleges that the trial court erred in excluding the written
statement made by the witness Preston to its claim agent,
which statement was offered in evidence on Preston's cross-
examination, and again in excluding the same statement
when it was offered as a part of the defense. The witness
testified on his direct examination that Owens stepped
off the car immediately ahead of him and turned and went
around behind the car; that he said "Good night" to Owens,
and then started northeast; that when the car came to a
stop Owens' body was under the back end of the car, and
when the car was pulled off from him the doctor said he was
dead. He was vigorously cross-examined by counsel for
the defendant, but adhered to his statement. Defendant
then offered the written statement, which differed slightly
from the plaintiff's direct and cross-examination, in this:
That in the written statement Preston was made to say
that he heard some one "holler" when the car started back.
Before the written statement was offered Preston had tes-
tified that he did not hear any one "holler" at all. The
statement was objected to on the grounds that it was im-
proper cross-examination, was irrelevant and immaterial.
The objection was sustained, and was renewed when the
statement was again offered in evidence as a part of the
defense, and was again sustained. As we view the record,
the words "when I heard this man holler" were immaterial,
irrelevant and collateral, and therefore the court did not

err in excluding the statement. 5 Jones, Commentaries on Law of Evidence, sec. 827; *Johnston v. Spencer*, 51 Neb. 198; *Ferguson v. State*, 72 Neb. 350.

In 5 Jones, Commentaries on Law of Evidence, sec. 827, it is said in part: "A party may impeach the credit and contradict the testimony of an adverse witness by showing that, upon some matter which is relevant and material, he has at other times made statements which are inconsistent with his testimony. But a party cannot, by drawing out, on cross-examination, statements by a witness which are irrelevant and collateral, gain the right to contradict such testimony by showing inconsistent statements of the witness at other times."

In *Johnston v. Spencer, supra,* it was said: "When a witness is cross-examined on a matter collateral to the issue he cannot, as to his answer, be subsequently contradicted by the party putting the question. The test of whether a fact inquired of in cross-examination is collateral is, would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea?"

This rule was followed and approved in *Ferguson v. State, supra.* As we view the record, it was wholly immaterial whether the witness heard some one "holler" at the time the car was started back, and the court did not err in excluding the written statement.

It is also contended that the trial court erred in sustaining objections to questions propounded to the witness Bales on cross-examination relating to what he saw and knew of the accident. It appears that Bales was a passenger riding on the inside of the car which killed Owens. He was called as a witness for the plaintiff merely for the purpose of testifying in regard to the movements of the car when it reached the corner of Fortieth and Hamilton streets. On his direct examination he was not questioned regarding the happening of the accident, nor whether he had seen Owens either before or after the accident. At the beginning of his cross-examination he testified positively that he did not see the accident at all; that he did not see

how Owens was hurt; that he did not see how he got under the car, and did not know how the accident occurred. It is contended, however, that if the defendant had been permitted to further cross-examine the witness it would have demonstrated to the court that the witness was concealing facts which he knew and could testify to concerning the accident. It can scarcely be contended that the cross-examination which defendant sought was either competent or proper cross-examination. The defendant could have made the witness its own if it had desired to do so, but, having declined to avail itself of that right, it is not in a position to complain of the ruling of the trial court.

Defendant complains of insrtuction No. 6, by which the court informed the jury: "And if you believe from a consideration of all the evidence in the case that the employees in charge of the car exercised such care in the movement of the car as to warnings and rate of speed as an ordinary, prudent person would have done, in view of all the conditions and surroundings there present, then you should find that the defendant was not negligent, and your verdict should be for the defendant. But if you believe from a consideration of all of the testimony that an ordinary, prudent person would have taken some precaution which the defendant's employees did not take, or would have done some act which they failed to do, or would have refrained from doing some act or thing which the employees did, then you should find that the defendant was negligent in that particular."

It is argued that under this instruction the jury might find the defendant guilty of some negligence wholly unsupported by the evidence. We think this assignment of error should not be sustained. The only evidence of negligence was that of starting the car backwards suddenly without warning while the plaintiff's intestate was attempting to cross over the track immediately behind the car. That was the issue in the case, and the jury could not have misunderstood that issue nor the effect of the evidence.

Finally, it is contended that the court erred in refusing to give instruction No. 7 which it tendered. The instruction was properly refused, because the narration of the facts set forth therein did not correspond with the testimony of defendant's own witnesses. Frank Pipal, the conductor on the car which killed Owens, testified that the car was about 50 feet long. Joseph Doyle, the motorman, testified that he backed the car about half its length. Witness Pipal stated that Owens did not fall on the pavement until the car was passing him in its backward movement to the south; that Owens then reached toward the handle at the rear platform of the car and fell down onto the pavement as the car passed on to the south. Even if it were true that Owens was on the pavement 3 feet south and 2 feet east of the car when it started south in its backward movement, the car still had over 20 feet farther to move after he fell, and when Owens' body was found, according to the testimony of Pipal, it was partly between the rails back of the hind wheels of the car. It seems perfectly clear that, if Owens had fallen on the pavement on the east side of the car as it passed him going toward the south in its backward movement, it would have been absolutely impossible for him to have been under the rear end of the car when it was brought to a stop. As we view the testimony and the conditions surrounding the accident, the instruction tendered should not have been given. We think it appears quite clear from the record that the accident occurred in the manner described by Preston, who was a wholly disinterested witness.

There appears to be no reversible error in the record, and the judgment of the district court is

AFFIRMED.