GEORGE BROOKS, APPELLANT, v. THAYER COUNTY, APPELLEE.

FILED APRIL 10, 1934. No. 28885.

*Barnes & Rain,* for appellant.

*Baldwin & Baldwin, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LANDIS, District Judge.

GOSS, C. J.

This is an action for damages for personal injuries and injuries to a truck. Plaintiff appeals from a judgment based upon a verdict against him.

The accident occurred about 8 o'clock the night of September 6, 1931, at a bridge in the public road two miles east and about three-quarters of a mile north of Bruning, in Thayer county. Plaintiff was driving a truck loaded with two cubic yards of gravel. He had just been employed to haul gravel for the purpose of surfacing a road. This was his first trip over the road.

The petition alleged that at the place in question the county had built a bridge at an abrupt angle to the road, necessitating a sharp turn to approach it from the south, and had permitted the approach to be unguarded either by posts or rails and unmarked by any warning sign indicating that the road made a sudden turn to the northeast across the bridge; that, when approaching the bridge from the south and driving at a lawful rate of speed and in a careful manner, plaintiff drove his truck into the ditch on the west side of the bridge, injuring him and his truck; that defendant's powers are exercised by a board of county commissioners having general supervision over public road and bridges with the duty to maintain them in a reasonably safe condition; that the damage was proximately caused by the insufficiency of the highway, the absence of warning signs, the lack of guard-rails or posts, and the failure to use ordinary care to maintain the highway in a reasonably safe condition.

In its answer defendant admitted the exercise of supervision over the road in question by the county board and the duty of maintenance in a reasonably safe condition, but denied that defendant permitted the approach to be unmarked and unguarded, alleged there was no occasion for guards or notice in such approach, that the bridge was in the usual and ordinary condition of bridges, was not in a dangerous condition, and in general traversed the other material allegations of the petition not admitted; for further defense the answer pleads that plaintiff was driving in a reckless and careless manner, at a dangerous and excessive rate of speed, that plaintiff's truck was not in proper mechanical condition for travel upon the public

roads, and that the injuries to plaintiff or to his truck were the result of his own negligence in operating it upon the road.

The evidence shows that the road was an ordinary, ungraveled north and south public road. A creek crossed it from the southeast to the northwest. The bridge was called a 16-foot bridge. Its roadway was actually 15 feet 9 inches wide. As approached from the south, it was built at an angle of 40 degrees and 22 minutes east of a line due north so as to cross the creek at right angles and save length. The bridge (and the approach from the south for a distance of 39 feet) ran almost northeast and southwest. 309 feet south of this 39 feet of the approach the road veers 3 degrees and 5 minutes west, so that 39 feet from the bridge, as approached from the south, there is a turn of 43 degrees and 27 minutes toward the east. There was no warning sign indicating a bridge or change of direction in the roadway. There was no wing or rail guarding the approach to the southwest corner of the bridge. This had been carried away the night before when a car driven by some young men went into the creek at this point, and had not been replaced. Plaintiff and his truck failed to keep the roadway and drove off the approach, going down the bank into the creek at the left of the bridge, injuring both.

Plaintiff assigns that the evidence is insufficient to sustain the verdict, that the verdict is contrary to law, and that the court erred in not directing a verdict for plaintiff. We think it will be of little value to analyze the conflicting evidence. We satisfy ourselves by saying that to hold with plaintiff on these points would be to declare in effect that the county is an insurer of the safety of those who travel its public roads. A county cannot be held to be an insurer of those who have occasion to use a county bridge or road. *Johnson County v. Carmen,* 71 Neb. 682; *Frickel v. Lancaster County,* 115 Neb. 506.

Under errors of law occurring at the trial, plaintiff charges that the trial court erred in permitting plaintiff's

witness, John Gerdes, on cross-examination, to give his opinion that plaintiff's truck was traveling 35 or 40 miles an hour before it reached the bridge. Gerdes had testified on direct examination that he lived north of the bridge, that he was in his yard a little less than a quarter of a mile away from the bridge and had seen the lights of a car coming from the south; that his attention was attracted to a crash, and he went down to the bridge, where he found plaintiff and took him to a doctor. The rest of his direct testimony relates to the bridge and conditions surrounding it and the accident. He was not interrogated in chief as to knowledge of the speed of the car. On cross-examination he was allowed, over objection, to testify to his opinion of the speed of the car "before it reached the bridge." This opinion did not go to the speed at which it was traveling near the bridge, because later he testified that trees in his pasture obscured the bridge so it could not be seen. As the bridge was between him and the approach to the bridge from the south, of course he could not see that either. He was evidently testifying on cross-examination to the speed a considerable distance south of the bridge, perhaps a quarter or half mile away, of a car coming almost directly toward him, basing his judgment upon the movement of the lights alone. It appears to be merely a guess. Even if the car had been going 35 or 40 miles an hour when he saw it first at a distance of a half mile, or could have continued at that speed until it disappeared from his view, it might have slackened its speed before his attention was attracted by the crash when it went off the approach. But the objections were that no foundation had been laid and that this was not proper cross-examination. His competency to testify to the speed is such that his testimony must be admissible for what it is worth, but his testimony is not clearly cross-examination. Plaintiff had testified he was going 20 to 25 miles an hour. Gerdes had not testified to the speed on his direct examination. Plaintiff argues that plaintiff had a legal

right to have his testimony as to speed refuted, if refutable, by evidence on behalf of defendant; and that, if defendant wished to use plaintiff's witness for that purpose, it should have made Gerdes its own witness.

"According to the orthodox rule, which exists in England, Canada and a number of jurisdictions in the United States, when a party produces a witness who is sworn and examined, the opposing party is not confined in his cross-examination to the matters upon which the witness is examined in chief, but may extend the cross-examination to every issue in the case." 28 R. C. L. 603, sec. 193.

"Until 1827, the orthodox rule seems to have been almost universally followed. But in a Pennsylvania case decided in that year it was said that a witness might not be cross-examined to facts which are wholly foreign to what he had already testified. Subsequently the broad rule was laid down by the United States supreme court, that a party has no right to cross-examine any witness except as to facts and circumstances connected with the matters stated in his direct examination. If he wishes to examine him as to other matters, he must do so by making the witness his own, and calling him as such in the subsequent progress of the cause. This rule, commonly known as the 'American rule,' has now become firmly established in the federal courts and in the courts of most jurisdictions of this country." 28 R. C. L. 604, sec. 194.

In this state the strict rule of cross-examination has been approved. *Atwood v. Marshall*, 52 Neb. 173; *Davis v. Neligh*, 7 Neb. 84; *Boggs v. Thompson*, 13 Neb. 403; *Hurlbut v. Hall*, 39 Neb. 889; *Easton v. Snyder-Trimble Co.*, 94 Neb. 18; *Owens v. Omaha & C. B. Street R. Co.*, 99 Neb. 364. But "The scope of the cross-examination of a witness rests largely in the trial court, and its ruling will be upheld, unless an abuse of discretion is shown." *Peterson v. State*, 63 Neb. 251; *Goemann v. State*, 100 Neb. 772. "Although a witness is cross-examined as to matters not brought out on the direct examination, the

judgment will not be reversed when it plainly appears that no prejudice. could have resulted." 28 R. C. L. 605, sec. 195. This same result is commanded by our section on civil procedure, providing that the court must disregard any error in the proceedings, and may not reverse any judgment on account thereof, unless it affects the substantial rights of a party. Comp. St. 1929, sec. 20-853. So the question to be answered on this point is whether the admission of this testimony on cross-examination affected plaintiff's substantial rights or, in other words, was prejudicial to him.

In *Callahan v. State,* 83 Neb. 246, it was held to be prejudicial error to require defendant to answer upon cross-examination a question relating to a subject upon which he had not been examined in chief. But that is a criminal case where the rule would be more strictly followed. There seems to be a dearth of civil cases in this jurisdiction wherein such cross-examination is held to indicate reversible error. There are many cases in which a rather wide latitude allowed by the trial court has been held to be within the court's discretion.

Here it is a rather close and delicate question. It is right on the border line. It may be said that, if defendant had made Gerdes its witness, it might have brought out the same testimony from him. That Gerdes was plaintiff's witness may have given the jury an opportunity to regard his testimony as to speed. of the truck as a greater impeachment of his case than if it had been offered by defendant using Gerdes as its own witness. Moreover, we are skeptical of the worth of his testimony as to the speed of plaintiff's truck, in view of his position; though he was not very specifically examined, nor cross-examined, as to the foundation of his testimony as to speed. On another trial this situation may not arise. We are loath to hold that the trial court abused its discretion in allowing the cross-examination and will not do so. On another trial the evidence will probably be such that the question will not arise. We have perhaps unnecessarily

treated the subject at such length to show a dangerous situation that may easily be avoided.

Other assignments of error refer to certain instructions given by the court on its own motion. We consider only those we find to be questionable. The first instruction, stating what the plaintiff and defendant pleaded, is complained of. In describing the allegations of negligence contained in the petition it says, in substance and very briefly, that plaintiff charges defendant was guilty of negligence in the construction and maintenance of a public highway and bridge, and that by reason thereof plaintiff drove his truck off the highway and into a ditch causing the truck to overturn. There is no mention in this instruction (1) of the abrupt angle of the approach and bridge to the general northerly course of the road, (2) of the failure to guard the approach by posts or rails, and (3) of the failure to mark the approach by any warning indicating a sudden turn of the road to the northeast across the bridge. These were material allegations of negligence which ought to have been given to aid the jury in knowing the issues so that they could check them with the evidence. These charges of negligence are nowhere else in the instructions definitely or adequately stated to the jury. Instruction No. 2, stating the burden of proof, merely says that it is upon plaintiff to prove "every material allegation of his petition." Instruction No. 3, stating the elements, merely states (on the point in question) that plaintiff must prove "that the defendant was negligent in the construction and maintenance of the highway referred to in the petition, the bridge thereon, and the approach thereto." These omitted charges of negligence were issues raised by the petition; they should have been stated to the jury. "It is elementary that it is the duty of the trial court * * * to fairly state the issues raised by the pleadings." *Larsen v. Larsen*, 115 Neb. 601. The evidence covered the points and we are of the opinion that this failure of the court to instruct thereon was prejudicial to plaintiff.

Testimony had been received showing that a car had gone off the approach the night before at the same point, that there were then no guard-rails or barricades and no warning signs on the road. By instruction No. 15 the court referred to testimony as to an accident which occurred at the same point when the bridge and highway were in the same condition, and then said: "This testimony was admitted solely for the purpose of its tending to show that the defendant had notice of conditions existing at that point, and should be considered only for that purpose." Plaintiff had offered an instruction on this point which was refused. It said this testimony was "admitted to prove the dangerous character of the place for want of guard-rails and warning signals, and knowledge thereof by the defendant." It would have been better if the court had adapted plaintiff's instruction and blended it with his own so as to show what the "conditions" were claimed to be as to guard-rails, barricades and warning signs, as well as to bring home to defendant the notice of the "conditions." This would have helped out the situation heretofore treated of as to the first instruction given by the court. If the acts of negligence relied upon had elsewhere been set forth, instruction No. 15 might have covered the situation. As they were not so set out, the jury were left to speculate as to what were the actionable "conditions" to be considered by them under this particular instruction.

Instruction No. 18 is a model instruction given by the court on comparative negligence, giving all the proper elements of such an instruction as laid down in the leading case on that subject. *Morrison v. Scotts Bluff County,* 104 Neb. 254. This case shows that the rule applies to counties. But instruction No. 17 is as follows:

"It is the law in cases of this kind that a person traveling over the highways and bridges of a county in whatever kind of vehicle he may choose to travel must exercise under the circumstances of the case such care as he should and could exercise to protect himself and his prop-

erty from injury, and that, if he fails to do so and is injured in consequence, he has no remedy against the county even though the highway may be defective."

The rule presented by this instruction ignores the comparative negligence of the parties. An instruction which misstates the law as to contributory negligence and is in conflict with the comparative negligence rule is erroneous. *Gerish v. Hinchey*, 120 Neb. 51; *Davenport v. Intermountain R. L. & P. Co.*, 108 Neb. 387. The instruction was complete in itself and tended to confuse the jury and was not cured by the true rule given them in the very next instruction on comparative negligence. "Where two conflicting instructions are given on a question, one containing an incorrect, and the other a correct, statement of the law, the latter will not cure the former." *Koehn v. City of Hastings*, 114 Neb. 106; *Toliver v. Rostin*, 120 Neb. 363.

Plaintiff claims the court erred to his prejudice in failing to instruct the jury that the contributory negligence of the plaintiff pleaded as a defense must have contributed to or caused the injury before the jury could find for defendant, even though plaintiff did not request such an instruction. "Where plaintiff has made a *prima facie* case in an action for negligence resulting in personal injuries without disclosing any negligence on his part, the failure to instruct the jury that contributory negligence as a defense must have been the proximate contributing cause of the injuries may be prejudicially erroneous even in absence of a request for such an instruction." *McCulley v. Anderson*, 119 Neb. 105. We think such an instruction should have been given.

Plaintiff complains of instruction No. 16, reciting the legal duty of one operating an automobile not to exceed a speed greater than is reasonable, having regard to the condition of the road, and in no event at a rate exceeding 45 miles an hour, stating that a violation, if any, is not negligence, but is evidence of negligence. Plaintiff says there was no evidence of any violation of law. True,

there was no evidence that plaintiff was driving in excess of 40 miles an hour, but there was evidence from which the jury might infer that his speed contributed to his failure to keep his truck on the highway. We do not find this particular instruction erroneous.

Other errors are assigned, but we do not consider them prejudicial.

For the reasons stated, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.