MERLIN OLSON, BY HIS MOTHER AND NEXT FRIEND, APPELLANT, v. COUNTY OF WAYNE, NEBRASKA, APPELLEE.

59 N. W. 2d 400

Filed June 19, 1953. No. 33333.

*George B. Boland* and *Harry N. Larson,* for appellant.

*Charles E. McDermott* and *H. D. Addison,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This case was brought by appellant to recover damages from appellee for injuries inflicted upon him as a result of the alleged insufficiency and disrepair of a public highway and bridge in Wayne County maintained by appellee for the use of the public upon which appellant was a traveler at the time of the accident in which he was injured.

The claims made by appellant are that appellee is a county of the state; that appellant was traveling towards the east by automobile in the nighttime on a highway and bridge of the county maintained by it for public use about 2 miles west and 2 miles south of Wakefield; that the highway and bridge were each insufficient, in disrepair, and unsafe for travel thereon; that appellee was negligent in these respects: Because it constructed and maintained a bridge on an angle from the southwest to the northeast over a deep ditch as a part of the highway which extended due west to east; that this required and there was a sharp turn in the highway immediately before and at the entrance to the bridge from the west which exposed any user thereof to the hazard and peril of going off the side of the bridge into the ditch; because the bridge did not have sufficient or reasonable guardrails, barriers, and abutments to protect travelers from the said hazard and peril, and the guardrails that were thereon were not in proper repair or painted so that they were easily visible; because there were no warning signs or devices to inform travelers of the dangerous situation at the bridge; and because appellee knew or was charged with knowledge that the bridge was unsafe for public travel upon the highway but failed to provide warning thereof to the public or to remedy the dangerous situation. It is further claimed that the insufficiency and disrepair of the highway and bridge and the negligence of appellee proximately caused the vehicle in which appellant was passing over the road and bridge to go off the right-hand side of the bridge, against the farther side of the ditch, and into the ditch; and that he was thereby seriously injured and is totally and permanently disabled. Appellee denied all the claims of appellant except it admitted that it is a county of the state; that there was an accident at about the time and place described by appellant; and that he sustained some injury.

The district court at the conclusion of the evidence

of appellant, on motion of appellee, directed a verdict for the county. A judgment of dismissal of the case was made and a motion for new trial was denied.

The manner of considering the evidence of the party against whom a verdict has been directed or a motion to dismiss the case has been sustained in determining the correctness of or the error in the action of a court in that regard does not require discussion. Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607; Weisenmiller v. Nestor, 153 Neb. 153, 43 N. W. 2d 568.

Appellant was on June 29, 1952, 16 years of age and was a member of the Wakefield Junior Legion baseball team. He and four other members of the team played in a night game of baseball with the Wayne Junior Legion team at Wayne. After the game four of them were returning to Wakefield in an automobile operated by Thomas Shellington, one of the Wakefield players, who was 17 years of age. Appellant sat on the right side of the rear seat of the car. They traveled out of Wayne on what is described as the Seventh Street road and continued until they were about 2 miles south and 2 miles west of Wakefield. That was the place of the accident involved in this case which occurred about 11:30 p. m.

The highway was a graded, dirt, county road. It was dry, quite smooth, and in reasonably good condition. It had one lane of travel, "room for two cars." It was about 20 feet wide. The road as it approached the place of the accident extended due west to east. The accident happened on a bridge that constituted a part of the highway. The road extended from due west to near the bridge and then made a slight curve to the southwest end of the bridge. The bridge is on an angle from the southwest to the northeast. The curve in the road commences just "west of the bridge." There is a turn in the road "Partly on and partly off" the bridge. "The road couldn't come square into the bridge * * *." For

about 50 rods west of the bridge it was level. The bridge was not easily visible to a person using the road while traveling this distance towards it. The traveler from the west could not see the bridge until he "was right on it." The width of the bridge was 24 feet. It was 28 feet long, had a concrete foundation, a cement floor, and was supported by a steel frame. It had a railing on each side consisting of two 3½-inch channel irons, the length of the bridge, fastened to 4 or 5 metal standards properly spaced on each side set in cement. The railings were unpainted, badly rusted, and dark in color. The railing on the right or southeast side had been for several years bent outward and downward at an angle from the bridge. Vehicles had run into it. At the southwest corner of the bridge it was substantially unfastened at the time of the accident. It was described as bent up and dilapidated, and at the southwest corner of the bridge it was "practically off." It had no effect in its condition of preventing a vehicle from going off the side of the bridge.

A bridge plank, unpainted and weather-beaten, 12 inches in width and 3 inches thick was placed along the right-hand side of the bridge. The west end was at the southwest corner and the plank extended eastward about 20 feet. It was fastened to the railing after it had been bent over in a previous accident. At the time in question one end of the plank was fastened so that the top of it was about 2½ feet above the floor of the bridge and the other end rested on the floor. The plank was not noticeable to one going eastward on the highway until he was close to it.

There is nothing to warn a traveler approaching from west of the bridge or of its situation in reference to the road. There had been at sometime before a warning sign on the right-hand side of the road west of the bridge and at other times there had been reflectors on or near its southwest corner. These had been removed before this accident.

The west and east road is intersected at the southwest end of the bridge by a road from the south and by a road from the north at the northeast end of the bridge. There have been several accidents on this bridge.

The weather the night of the accident was not stormy, "it was just dark. It wasn't raining * * * it was just awful dark that night."

The vehicle in which appellant was riding approached the bridge at a speed of 45 to 50 miles an hour on the right side of the road with its headlights on the high or bright beam. The driver of the car did not see the bridge until he was about 25 feet from it. The vehicle proceeded towards the east with its south or right-hand wheels about 2 feet inside the southwest corner of the bridge. The car struck and broke the bridge plank above-described, went off the southeast side of the bridge, traveled through space for about 45 feet, and struck the bank on the far side of the ditch 5½ feet lower than the bridge. It turned over and landed on its top 42 feet from where it contacted the bank of the ditch. It came to rest in the creek 85 feet from the bridge. The appellant sustained injuries resulting in permanent and total disability.

There was not at common law a right of action against a county for the recovery of damages resulting from a defective highway or bridge. The source and extent of liability of a county in this state for damages of this character are statutory. Hollingsworth v. Saunders County, 36 Neb. 141, 54 N. W. 79; Bryant v. Dakota County, 53 Neb. 755, 74 N. W. 313; Dickenson v. County of Cheyenne, 146 Neb. 36, 18 N. W. 2d 559. The applicable statute is section 39-834, R. R. S. 1943, and it contains these provisions: "If special damage happens to any person, * * * by means of insufficiency or want of repair of a highway or bridge, which the county or counties are liable to keep in repair, the person sustaining the damage may recover in an action against the county, * * * Provided, however, such action is commenced

within thirty days of the time of the injury or damage occurring; * * *."

A county is obligated to use reasonable and ordinary care in the construction, maintenance, and repair of its highways and bridges so that they will be reasonably safe for the traveler using them while he is in the exercise of reasonable and ordinary caution and prudence. The duty of the county will not be extended by construction beyond the words and fair implication of the statutory liability. A county is not an insurer of the safety of a person who uses its roads and bridges or the safety of the highways and bridges maintained by it for the use of the public. Wittwer v. County of Richardson, 153 Neb. 200, 43 N. W. 2d 505; Dickenson v. County of Cheyenne, *supra;* Brooks v. Thayer County, 126 Neb. 610, 254 N. W. 413; Frickel v. Lancaster County, 115 Neb. 506, 213 N. W. 826.

The word insufficiency in the statute has been defined as "inadequate to the need, use, or purpose of the highway." Dickenson v. County of Cheyenne, *supra.* It has been said that the word repair as used in the road laws means "to restore to a sound or good state after decay, injury, dilapidation, or partial destruction." Brown County v. Keya Paha County, 88 Neb. 117, 129 N. W. 250, Ann. Cas. 1912B 790.

In an action to recover damages from a county by virtue of the statute the burden is on the plaintiff to establish negligence of the county and that its negligent act or omission was the proximate cause of the injury to the plaintiff or that it was a cause that proximately contributed to it. Wittwer v. County of Richardson, *supra;* Bowerman v. Greenberg, 142 Neb. 721, 7 N. W. 2d 711.

Appellant charges as negligence of appellee that it constructed and maintained the bridge on an angle from the southwest to the northeast across a deep ditch as a part of the highway which extended from due west to east, and that this caused a sharp turn in the

highway immediately before and at the entrance to the bridge from the west which exposed a user of a road to the hazard and peril of going off the right side of the bridge. Generally negligence may not be predicated on a curve or variation in a dirt or county road or the location or dimensions of a bridge placed therein or adjacent thereto according to road plans unless it is so obviously dangerous that no reasonable or prudent man would approve the plans. The crookedness of a road duly located does not usually render a county liable for injuries resulting therefrom.

The facts in Brooks v. Thayer County, *supra,* were: The road was an ordinary north and south county road. A creek crossed it from southeast to northwest. The roadway of the bridge was about 16 feet. The county built the bridge at an abrupt angle to the road requiring a sharp turn to approach and get on it from the south. The angle was 40 degrees and 22 minutes east of a line due north. The bridge was almost northeast and southwest. An approach from the south required a turn of 43 degrees and 27 minutes toward the east. There was no warning sign indicating a bridge or change of direction in the road. There was nothing guarding the approach to the southwest corner of the bridge. The guardrail that had been there was removed by a traveler who went into the ditch at this point the night before the accident involved in this case. The plaintiff was traveling north in a truck during an evening in September, failed to keep the roadway, and went into the creek at the left of the bridge. He alleged insufficiency of the highway, absence of warning signs, lack of guardrails, and failure to use ordinary care to maintain the highway in a reasonably safe condition. Plaintiff appealed from a judgment and verdict against him. This court said: "Plaintiff assigns that the evidence is insufficient to sustain the verdict, that the verdict is contrary to law, and that the court erred in not directing a verdict for plaintiff. We think it will be of little value

to analyze the conflicting evidence. We satisfy ourselves by saying that to hold with the plaintiff on these points would be to declare in effect that the county is an insurer of the safety of those who travel its public roads. A county cannot be held to be an insurer of those who have occasion to use a county bridge or road."

The plaintiff in Tomjack v. Chicago & N. W. Ry. Co., 116 Neb. 413, 217 N. W. 944, claimed negligence because defendant failed to place its bridge in the line of travel when approaching it from the north and that the ditch west of the bridge was unguarded. This court in reversing a judgment for the plaintiff and directing a dismissal of the case said: "Where a culvert, adjacent to its tracks and on its right of way across a public highway, is built by a railroad company in accordance with the general plans of highway and has been adopted as a part of the highway, negligence will not be predicated upon it merely by reason of its location and dimensions."

Loehe v. Village of Fox Point, 253 Wis. 375, 34 N. W. 2d 126, considered a statute authorizing the recovery of damages resulting to any person or his property "by reason of insufficiency or want of repair of any highway which any village is bound to keep in repair." The accident in which the plaintiff was involved occurred in the early hours of a foggy morning. He was traveling east at a place where the street made a right-angle turn to the north. He failed to see the turn until he arrived at it. His car left the highway and struck a tree. He claimed insufficiency of the street. The court said: "The mere existence of a right-angle turn in the roadway is not per se an insufficiency in the highway. There was no duty on the part of the village to give any warning of road conditions which in and of themselves provide ample and timely notice to one using the highway with due care." See, also, Paul v. Faricy, 228 Minn. 264, 37 N. W. 2d 427; Wyant v. Faith Township, 49 S. D. 220, 207 N. W. 87; Watters v. City of Omaha, 76 Neb. 855, 107 N. W. 1007; Smith v. Wakefield, 105 Mass. 473; 29

C. J., Highways, § 447, p. 685. There was no insufficiency of the highway or bridge because of any of the matters set forth in the first specification of negligence.

It is alleged as negligence that appellee failed to maintain signs or devices to apprise the traveling public of the dangerous situation at the bridge. There was nothing of this nature west of the bridge to give warning of it or that there was any unusual situation which should be approached by a traveler with alertness and caution. There was a metal plate supported by a metal standard about 3½ feet above the surface of the road near the southwest corner of the bridge on which appeared this inscription: "10 Ton Cap." There was a bridge plank 3 inches thick, 12 inches wide, and about 20 feet long along the southeast or right side of the bridge. These, the bridge, and the roadway were indicative of the situation. The roadway was 20 feet wide until it came near the bridge and then it widened to 24 feet, which was the width of the bridge. The road west of the bridge was level for about 50 rods. The motor vehicle, including the lights, was in good condition. The headlights were on the bright or high beam. The bridge capacity sign and the plank on the bridge that constituted a guardrail were directly opposite the line of travel as the car proceeded towards the bridge. The roadway plainly showed the curve in the road. The driver of the car had been over this road and bridge on previous occasions, had been around it when hunting, and knew the situation as it existed. If he had followed the road there would have been no accident. There is no requirement of law that a county erect and maintain safety warning signs of conditions such as curves, turns, locations of bridges, and the like, unless the duty to do so at a particular location is dictated by reasonable and ordinary care in the maintenance of its highway.

Dickenson v. County of Cheyenne, *supra,* was a suit by a traveler injured while operating a vehicle on a county road. He was driving south at about 30 miles

an hour on a dead end road which required him to turn either east or west. He drove into the far side of a borrow pit and was seriously injured. There was no warning sign. It was dark and foggy at the time of the accident. Plaintiff did not see the intersection until he was on it. He charged the road was insufficient by reason of not having warning signs installed either along the road or across the dead end. The fact that the road turned could, under normal conditions, be seen for several hundred feet. This court reversed a judgment for the plaintiff and dismissed the case. It is stated therein: "We cannot believe that the failure to put up a sign showing that the road turns * * * is such an omission as would charge the county officers with negligence in their duty in that regard."

In Tomjack v. Chicago & N. W. Ry. Co., *supra,* the facts recited in the opinion show that a bridge across a river was nearly at a right angle to the highway and to meet this situation the road as soon as it crossed the railroad track in going from the north turned with a sharp curve to the right towards the southwest until about half way from the railroad crossing to the bridge, then it turned to the left. A few feet south of the railroad and as a part of the south approach the railroad company built a bridge or culvert parallel with the rails to carry water collected in the right-of-way ditch. It was 17 feet across and 31 feet long east and west and had a guardrail at either end. This bridge or culvert was built as a part of the public road. The plaintiff was riding in an automobile moving from the north across the railroad track in the nighttime, and the driver instead of keeping in the driveway and crossing the culvert or bridge drove into the ditch at the west end of the culvert. The claims of negligence were that the bridge was not placed in the line of travel when approaching it from the north, and that the situation was unguarded by warning of any kind. A judgment for the plaintiff was reversed and the case was ordered dis-

missed. The court said: "The second claim of negligence, as to the lack of guard or warning, is, it seems to us, equally as untenable as the first. If we hold that a 31-feet wide culvert is not sufficient crossing for a stream or ditch and that it must be guarded, or hold that every turn in the road is ground for actionable negligence, unless some one is stationed there with cap and bells to warn the wild and reckless, then we shall lay upon those who build and maintain roads a greater burden then we feel the law justifies. But that is exactly what the plaintiff asks us to do in this case. It was the duty of the driver of the car after dark on this road to proceed so that his headlights would mark out the traveled road * * *." See, also, Butcher v. City of Racine, 189 Wis. 541, 208 N. W. 244; Loehe v. Village of Fox Point, *supra*.

A specification of negligence concerns the guardrails on the bridge. The one here involved was on the southeast or right side. It is said that it was insufficient to protect a traveler from driving off the side of the bridge into the creek, and that it was out of repair, not painted, and not easily visible. Generally a guardrail need not be of sufficient strength to withstand the impact of the momentum of a rapidly moving motor vehicle. In Wasser v. Northampton County, 249 Pa. 25, 94 A. 444, L. R. A. 1915F 973, the court said: "There is no duty on the part of a municipality to erect a guard rail strong enough to prevent an automobile driven at a high speed from running over an embankment in close proximity to the highway. The presence of a guard rail gives notice that the place where it is erected is dangerous."

In Davison v. Snohomish County, 149 Wash. 109, 270 P. 422, the rule is stated that: "* * * as a practical proposition, municipalities cannot be required to protect long stretches of roadway with railings or guards capable of preventing an automobile, moving at a rapid rate, from leaving the road if the car be in any way deflected from the roadway proper and propelled against

the railing." See, also, Swain v. City of Nashville, 170 Tenn. 99, 92 S. W. 2d 405; City of Catlettsburg v. Sutherland's Administrator, 247 Ky. 540, 57 S. W. 2d 512; 5 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.), § 3263, p. 407; 60 C. J. S., Motor Vehicles, § 190, p. 528.

The guardrail or its condition could not have been the proximate cause of the accident. The driver of the car stated that his vision of the road in front of the vehicle was restricted to 25 feet, and that he did not see the bridge or anything about it until he was within 25 feet of the bridge. The minimum rate of speed at which the car was traveling at that time was at least 40 miles an hour. The time that elapsed between when he first saw the bridge and when the car went over the side of the bridge was obviously less than one-half of a second. The most perfect and appropriate bridge railing could not have been a factor in avoiding the accident under these circumstances. The fact that the course of the car continued directly to the east from where it left the traveled part of the road until it struck the railing and went off the bridge and that there was no evidence of an attempt to turn the vehicle to the left or to stop it is convincing that the driver was oblivious to the situation until the accident was inevitable and probably until it happened.

The evidence fails to establish negligence of the county. The district court was right in granting the motion for a directed verdict and in rendering a judgment of dismissal.

The judgment should be and it is affirmed.

AFFIRMED.