EDWARD STEVENS, APPELLANT, V. COUNTY OF DAWSON,
STATE OF NEBRASKA, APPELLEE.

111 N. W. 2d 220

Filed October 20, 1961. No. 34994.

*William S. Padley*, for appellant.

*William A. Stewart, Jr.*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an action against Dawson County, Nebraska, for damages caused by a defective bridge. Edward Stevens, the appellant, was the plaintiff in the court below. The jury returned a verdict for the county.

The plaintiff's motion for new trial was overruled and he has appealed.

The plaintiff's assignments of error are that the verdict is contrary to the evidence and the law; that the court erred in submitting the issue of contributory negligence to the jury; and that the court erred in failing to give an instruction requested by the plaintiff relating to the assured clear distance rule.

The liability of a county for defective highways and bridges is statutory. § 39-834, R. R. S. 1943. The rules applicable to an action under the statute are as follows: The burden is on the plaintiff to establish negligence on the part of the county. The county is not an insurer of the safety of the bridges it constructs and maintains upon public highways. The plaintiff must prove by a preponderance of the evidence that the defect in the bridge was known or that it existed for such a length of time that with reasonable diligence it could or should have been discovered by the county. The county is not liable on account of latent defects in the bridge but only for such as are patent and may be ascertained by reasonable inspection. The county is not liable on account of defects in a bridge caused by climatic conditions beyond its control. Wittwer v. County of Richardson, 153 Neb. 200, 43 N. W. 2d 505.

The accident in which the plaintiff was injured occurred at approximately 8:30 p. m. on March 26, 1960. The plaintiff was driving his new Chevrolet pick-up truck south on a county road in Dawson County. At a point approximately 3½ miles north of Gothenburg, Nebraska, a bridge or box culvert across the highway had partially collapsed. There were no barricades or other warning devices posted on the road. The plaintiff approaching from the north did not see that the bridge was out in time to avoid driving onto the bridge and into and against the embankment at the south end of the bridge where the collapse occurred.

The evidence shows that the bridge in question was

constructed of concrete and was erected more than 25 years ago. The bridge consisted of a concrete deck or floor supported by two upright back walls. On each side of the back walls, wings ran back at an angle for approximately 5½ feet. The opening under the bridge was approximately 8 feet wide and 4 feet high. The bridge extended across the highway 17 or 18 feet and lengthwise in the traveled portion of the road for 10½ feet.

The creek that runs under the bridge drains an area of more than 30 square miles. Several days before the accident happened there had been a very heavy run-off of water from melting snow. One witness testified that all of the streams in the area were running at flood stage on March 22, 1960, 4 days before the accident happened. There was other testimony that the water had stopped running in the creek from 4 to 6 days before the accident happened.

The bridge was inspected by two employees of the defendant on March 23, 1960. One of the employees testified that at that time the opening of the bridge was about two-thirds full of water and the water outside the bridge was 50 or 75 feet wide and against the road. The inspection consisted of driving across the bridge in a pick-up truck and looking for holes or washouts. No effort was made to look under the bridge or ascertain the condition of the back walls supporting the deck or floor of the bridge.

On the afternoon of the accident the plaintiff went to town and returned home about 4:30 p. m. On this trip the plaintiff crossed the bridge twice and did not notice anything out of the ordinary about the bridge. Luella Stevens, the plaintiff's wife, was over the bridge at around 5 p. m. the same afternoon. She did not see anything wrong with the bridge. J. R. Auld, a farmer who lives just north of the bridge, was over the bridge with a farmhand at about 6:30 p. m. on the day of the accident.

On the morning after the accident the floor or deck of the bridge at the southwest corner was still intact and level with the surface of the road, but the southeast corner was 4 feet 9 inches below the surface of the road. A part of the south back wall of the bridge had fallen to the north and was lying under the deck of the bridge. The water had washed a deep hole under the south back wall of the bridge which resulted in its collapse.

The plaintiff's theory of the facts is that the south back wall of the bridge settled and fell to the north while there was water still running in the creek; that the south end of the floor or deck of the bridge was supported by only the earthen bank south of the back wall for some time before it collapsed; and that if the defendant had made an adequate and timely inspection of the bridge it would have discovered that the south back wall had collapsed, would have been able to warn the plaintiff, and, thus, avoided the accident.

There is no direct evidence as to when the back wall of the bridge may have collapsed. One witness, a brother-in-law of the plaintiff, testified that on the morning after the accident he saw that silt had been deposited upon the back wall by the washing water. No other witness so testified. A state safety patrolman testified specifically that he did not see any silt on the abutment. Other witnesses testified to the presence of mud and standing water under the bridge after the accident. The jury was not compelled to find that the back wall collapsed while there was water still running in the creek.

The plaintiff's other allegation of negligence had reference to a concrete "floor" at the bottom of the opening under the bridge which had washed away several years before the accident. There was a failure of proof as to this allegation. What evidence there was tended to prove that the floor was unnecessary and that the county was not negligent in failing to replace it.

The verdict of the jury is not contrary to the evi-

dence and the law. The assignment of error to that effect is not sustained.

On the second day of the trial the plaintiff filed a list of nine instructions to be submitted to the jury. Six of the requested instructions related to the rules of the road and the standard of care required of the plaintiff. The plaintiff did not withdraw any of the requested instructions and did not request that the issue of the negligence of the plaintiff, if any, be withdrawn from the jury. Clearly, the case was tried upon the theory that contributory negligence was an issue to be submitted to the jury. A party requesting instructions on a certain theory cannot be heard to complain on appeal that the trial court gave other instructions on the same theory. Ballantyne v. Parriott, *ante* p. 215, 109 N. W. 2d 164. The plaintiff cannot now complain that the trial court erred in submitting the issue of contributory negligence to the jury.

Two of the instructions requested by the plaintiff related to the assured clear distance rule. Of these requested instructions, one was given by the trial court and the other was refused. The plaintiff's motion for new trial did not assign as error the refusal of the trial court to give the instruction requested. To review alleged errors in refusing instructions, they must be called to the attention of the trial court in the motion for new trial. Schmitt & Bro. Co. v. Mahoney, 60 Neb. 20, 82 N. W. 99.

The judgment of the trial court is correct and is affirmed.

AFFIRMED.