MERLIN OLSON, INDIVIDUALLY AND AS ASSIGNEE, APPELLEE, v. UNION FIRE INSURANCE COMPANY, ALSO KNOWN AS UNION INSURANCE COMPANY MUTUAL, APPELLANT.
118 N. W. 2d 318

Filed November 30, 1962. No. 35195.

Lyle C. Holland and Healey & Healey, for appellant.

Harry N. Larson, Wear, Boland, Mullin & Walsh, and A. Lee Bloomingdale, Jr., for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an action by plaintiff, individually and as assignee of Thomas Shellington, against the defendant insurance company because of the refusal of the latter to settle the claims of plaintiff against Thomas Shellington within the limits of an automobile insurance policy issued by the insurance company to E. C. Shellington, Thomas Shellington being an additional insured under the provisions of the insurance policy.

The automobile accident giving rise to the present

litigation occurred on June 29, 1952. At about 11:30
p.m. of that day Thomas Shellington, then 17 years of
age, was driving his father's automobile from Wayne to
Wakefield, in Wayne County, Nebraska, accompanied
by four other members of the Wakefield Junior Ameri-
can Legion baseball team. Merlin Olson was one of
the four guests riding in the Shellington automobile.
At a point 2 miles south and 2 miles west of Wakefield
an accident occurred on a bridge which had been con-
structed on an angle with the highway. There was a
curve in the highway immediately west of the bridge.
The road was level for 50 rods west of the bridge. The
bridge was difficult to see until one approached close
to it. The railings on the bridge were unpainted, badly
rusted, and dark in color. There was nothing to warn
an approaching traveler from the west of the position
of the bridge with reference to the road. It was a
dark night. The automobile approached the bridge at a
speed of 45 to 50 miles an hour on the right side of the
road with its headlights on the bright beam. The driver
did not see the bridge until he was about 25 feet from
it. The automobile struck the bridge railing and went
off the bridge. Merlin Olson sustained injuries re-
sulting in total and permanent disability. A more de-
tailed statement of the facts can be found in Olson v.
Shellington, 167 Neb. 564, 94 N. W. 2d 20.

Merlin Olson, by his mother and next friend, brought
suit against the County of Wayne to recover damages
for his injuries as a result of the alleged insufficiency
and disrepair of the highway and bridge at the place of
the accident. The trial court directed a verdict for the
defendant at the conclusion of the evidence, and this
court affirmed. Olson v. County of Wayne, 157 Neb.
213, 59 N. W. 2d 400. Plaintiff then commenced an
action against Thomas Shellington to recover for in-
juries sustained while riding as a guest in the automobile
driven by Shellington. Whether or not Shellington was
guilty of gross negligence was the primary issue in that

case. The jury found for the plaintiff in the amount of $24,000 and added these words in its verdict: "We find slight negligence on the part of the defendant." The trial court set aside the inconsistent verdict and ordered a new trial. This court affirmed. Olson v. Shellington, 162 Neb. 325, 75 N. W. 2d 709.

Upon a second trial of the case in the district court the jury found the driver of the automobile guilty of gross negligence and returned a verdict for the plaintiff for $50,000. This court on appeal held that the evidence was sufficient to take the case to the jury on the issue of gross negligence and affirmed the judgment. Olson v. Shellington, 167 Neb. 564, 94 N. W. 2d 20. The insurance company thereupon paid $10,000 with interest and costs, such amount being its limit of liability under the provisions of the insurance policy.

The plaintiff thereafter commenced this action against the insurance company, alleging the issuance of the insurance policy to E. C. Shellington, that Thomas Shellington was an additional insured, the limit of liability as to any one person of $10,000, the offers to settle plaintiff's claims for $10,000, and the demands of Thomas Shellington that the offers of settlement be accepted; asserting negligence and bad faith by the insurance company in refusing to settle the claims for $10,000; and praying for judgment for $50,000. The insurance company denied liability and specifically denied that it was guilty of any negligence, or that it acted in bad faith in any manner in its handling of the litigation. For reply the plaintiff specifically denied that defendant was no longer obligated to pay any further amount by virtue of the issuance of the policy of insurance and otherwise generally denied the affirmative allegations of the answer. Upon the trial of the case the jury returned a verdict for plaintiff against the insurance company for $40,000. The insurance company has appealed. The insurance company assigns as error the failure of the trial court to sustain its motions for a directed verdict.

The liability of an insurer to pay in excess of the face of the policy accrues when the insurer, having exclusive control of settlement, in bad faith refuses to compromise a claim for an amount within the policy limit. The weight of authority is to the effect that when the insurer has the exclusive right to settle a claim within the limits of its liability, it has an option to compromise but no obligation to do so. In the event the insurer elects to resist a claim of liability, or to effect a settlement thereof on such terms as it can get, there arises an implied agreement that it will exercise due care and good faith where the rights of an insured are concerned.

The amount of liability fixed by the insurance policy, upon which the premium is paid, determines the limit of the contractual liability and duty of the insurer. An insurer may settle a claim within its limit of liability as it chooses since the insured cannot be injured by a settlement to be wholly paid by the insurer. The exclusive power to settle a claim within the limits of its liability is therefore ceded to the insurer for its sole benefit. While an insured may compromise his possible liability over and above the limits of the insurance policy, he has no duty even to attempt to do so. He may rely upon the policy, the promise to indemnify in a fixed amount, and the duty of the insurer to defend and to use its discretionary authority to settle in good faith. It is clear that the insurance company is not liable to plaintiff for refusal to settle his claim unless the refusal was in bad faith. The question raised by this appeal is whether or not the evidence is sufficient to present a question for the jury as to the bad faith of the insurance company.

"Good or bad faith is a state of mind. Of necessity, it must be determined from proof of conduct, except as the owner of the mind discloses its operations. Defendants, being corporations, could act only through agents, whose state of mind is that of the defendants."

City of Wakefield v. Globe Indemnity Co., 246 Mich. 645, 225 N. W. 643.

With these fundamental rules in mind we shall set forth the evidence upon which the verdict was returned. The testimony of plaintiff is to the effect that the serious injury sustained by Merlin Olson and the course of the litigation between plaintiff, the County of Wayne, and Thomas Shellington indicated that a judgment in excess of the limits of the insurance policy would be obtained and that it was negligence or bad faith on the part of the insurance company to refuse to settle the claim within the limits of the policy upon demand by Thomas Shellington that it do so. The evidence of the insurance company is that it honestly believed that gross negligence on the part of Thomas Shellington, the driver of the automobile involved in the accident, could not be established; in other words, that it was a nonliability claim. The evidence shows that the insurance company took statements from all persons having any knowledge concerning the accident. Its attorneys advised that gross negligence on the part of Thomas Shellington did not exist. The manager of the claim department, a lawyer, was of the opinion that gross negligence did not exist. The insurance company employed Guy C. Chambers, an able lawyer of long experience in personal injury cases involving gross and slight negligence, for an opinion as to whether or not Thomas Shellington could be held for gross negligence. His opinion was, after a study of the evidence in the Wayne County case, the statements and depositions taken, and a consideration of the Nebraska Supreme Court decisions, that gross negligence did not exist as a matter of law. After it was determined by the rulings of the district court that the evidence of gross negligence was sufficient to submit the case to a jury, the agents and legal counsel of the insurance company determined that the case could be successfully defended before an impartial jury. The question here is not whether its judgment was correct in

analyzing the facts and the law of the case, but whether it acted honestly, without negligence, and in good faith.

We think the evidence shows conclusively that it used all available means to assemble the facts and to determine the applicable law. Whether or not the evidence was sufficient to sustain a finding of gross negligence was a close question as shown by the meticulous care with which the facts were considered by this court in Olson v. Shellington, 167 Neb. 564, 94 N. W. 2d 20. "Courts, as well as attorneys, sometimes differ on the law applicable to a given state of facts." Berk v. Milwaukee Automobile Ins. Co., 245 Wis. 597, 15 N. W. 2d 834. We find none of the elements of negligence or bad faith existed in the making of these determinations. The conclusion of the insurance company that it had a valid defense, although wrong, is not in itself evidence of negligence or bad faith. Byrnes v. Phoenix Assurance Co., 303 F. 2d 649.

While it is true that the insurance company knew of the seriousness of the injuries sustained by Olson in the accident and would sustain a judgment for as much as $100,000, it was not bound to surrender its defense of nonliability to avoid being held for a judgment in excess of the limits of its policy. It cannot be held merely because its determination, honestly arrived at, proved to be erroneous in the light of subsequent events. The contention of the plaintiff is, in effect, that the insurance company, primarily in the light of previous litigation, should have foreseen a judgment against Thomas Shellington in excess of its policy limits and that its mistake in this respect amounts to negligence or bad faith. We think not.

In the instant case Thomas Shellington has at all times denied that he was guilty of any negligence. His demand that the insurance company settle the claim is not based, therefore, on any admitted liability on his part but on the theory that the insurance company should pay $10,000, which it claimed it did not owe, in

order to relieve Shellington of the litigation and the incidents thereof. It is not negligence or bad faith on the part of an insurer to refuse a settlement which it honestly believes is not to its best interest merely to avoid the distasteful incidents of litigation on the part of its insured.

"Exclusive authority to act does not necessarily mean the right to act arbitrarily. * * * The right to control the litigation in all of its aspects carries with it the correlative duty to exercise diligence, intelligence, good faith, honest and conscientious fidelity to the common interest of the parties." Traders & General Ins. Co. v. Rudco Oil & Gas Co., 129 F. 2d 621, 142 A. L. R. 799.

"* * * a defense going far enough to show reasonable and probable cause for making it will vindicate the good faith of the insurance company." Hall v. Preferred Acc. Ins. Co., 204 F. 2d 844, 40 A. L. R. 2d 162.

"* * * it cannot be said to be bad faith to deny a claim when there is substantial evidence to support the denial." Kleinschmit v. Farmers Mut. Hail Ins. Assn., 101 F. 2d 987.

The general rules as to the liability of the insurer are stated in Davy v. Public National Ins. Co., 181 Cal. App. 2d 387, in the following apt language: "Good faith implies honesty, fair dealing and full revelation. * * * Bad faith implies dishonesty, fraud and concealment. * * * Neither mistaken judgment nor unreasonable judgment is the equivalent of bad faith. * * * As a consequence, liability upon the part of the insurer for refusal to accept an offer of settlement may not be predicated upon its failure to correctly predict the outcome of the action it is defending." As one court aptly stated: "The gift of prophecy has never been bestowed on ordinary mortals, * * *." Georgia Casualty Co. v. Mann, 242 Ky. 447, 46 S. W. 2d 777.

There is a lack of uniformity in the cases in dealing with this subject. See, Annotations, 40 A. L. R. 2d 168, 68 A. L. R. 2d 892. We shall not undertake a discussion

of the refinements of these cases. We think the controlling rule in the instant case is: If the insurer has exercised good faith in all of its dealings under its policy, if the settlement which it has rejected has been fully and fairly considered and has been based on an honest belief that the insurer could defeat the action or keep the judgment within the limits of the policy, and if its determination is based on a fair review of the evidence after reasonable diligence in ascertaining the facts, accompanied by competent legal advice, a court will not subject the insurer to liability in excess of policy limits if it ultimately turns out that its determination is a mistaken one. See Christian v. Preferred Acc. Ins. Co., 89 F. Supp. 888.

Where an insurer acts honestly and in good faith upon adequate information, it will not be held liable because it failed to correctly prophecy the result. The evidence of the plaintiff fails to make even a prima facie case of bad faith. The evidence of the insurance company which stands undisputed shows the good faith of the company in refusing to settle within the limits of the insurance policy. The trial court erred, therefore, in not sustaining the motion of the insurance company for a directed verdict at the close of all the evidence. The judgment of the district court is reversed and the cause remanded with directions to sustain defendant's motion for judgment notwithstanding the verdict and to dismiss the action.

REVERSED AND REMANDED WITH DIRECTIONS.

BROWER, J., dissenting.

I respectfully dissent from the decision of the court. My disagreement with the court is in the application of the law to the facts in this particular case. The case against Wayne County was brought July 23, 1952. The decision of this court in Olson v. County of Wayne, 157 Neb. 213, 59 N. W. 2d 400, was decided June 19, 1953. To my mind this court in that case decided that condition of the road or bridge was not the proximate

cause of the plaintiff's injury and rather pointedly suggested that the negligence of the driver was the proximate cause. On April 2, 1954, Merlin Olson, by his next friend, started his action against Thomas Shellington, the insured's son. At the suggestion of defendant's counsel made by letter to the company, it sought the opinion of Mr. Guy Chambers, an eminent lawyer, particularly qualified in personal injury actions, as to the liability of the defendant about the middle of September 1954. The portion of the letter of the defendant's counsel suggesting the reference made after consulting the defendant Thomas Shellington is in these words: "Considering that Tom Shellington is a minor, and not a very bright minor at that, it is doubtful if he understands why he is not liable to the injuries to Merlin Olson or to any other passengers in the automobile which he was driving. We would therefore like to visit with you about the possibility of securing an opinion from a recognized authority on negligence law to the effect that Tom Shellington is not liable for any injuries to the guests in the car, and that we are therefore not being unreasonable in refusing to settle this case within the limits of the policy. It would seem that such an opinion would be of much more value to show our good faith in the handling of this claim than any statement from young Shellington to the effect that he doesn't believe he is liable for the injuries to Merlin Olson. When Mr. Head returns from his vacation, we would like to take that matter up with him."

This portion of the letter to my mind is susceptible of different meanings. One might be that the company was not attempting to negotiate any settlement and intended in all events to stand pat and sought the advice of counsel wholly as a defense to a suit of the present nature well knowing the minor defendant was not very bright and not convinced of his not being liable for the plaintiff's injuries; further, that counsel writing the letter anticipated an adverse judgment in the case as early

as 1954. Mr. Chambers, after studying the files of the defendant herein with respect to the accident and the evidence in the case against the County of Wayne, gave his opinion that Shellington was not guilty of gross negligence and the plaintiff guest could not recover. Neither Mr. Chambers nor anyone else was ever consulted again in spite of the fact that subsequent events in my opinion increasingly pointed to the ultimate liability of the defendant Shellington. This is a case for injuries that the defendant's vice president handling claims, himself a lawyer, conceded would substantiate a verdict of at least $100,000, if liability was established. On March 18, 1955, the jury returned the verdict for $24,000 after the trial court by its instructions had submitted the issue of Shellington's gross negligence to the jury. The verdict was set aside because of the special finding or notation on the verdict that defendant was guilty of "slight negligence." On appeal to this court the defendant contended the case should have been dismissed on his motion for judgment notwithstanding the verdict because there was no evidence of gross negligence. This court sustained the trial court in granting a new trial but refused to dismiss the case. Its opinion, Olson v. Shellington, 167 Neb. 564, 94 N. W. 2d 20, indicates clearly that an issue of gross negligence sufficient to submit to the jury was shown in the first trial. Defendant argues that another jury might well have held that the negligence was only slight. This is true of course but it might on the other hand indicate a jury would on a subsequent trial find for the plaintiff on the issue of gross negligence and under circumstances not rendering their verdict assailable. That the defendant itself realized the situation was grave is to my mind shown to a considerable extent by its raising the reserve for this risk from time to time. On the report of the accident it was $1,500. Later it was raised to $4,000. On June 23, 1953, after the Supreme Court's opinion in Olson v. County of Wayne, *supra,* it was

raised to $9,000. In December 1958, it was raised to $10,000, the full limits of the policy, though all other liability appeared to be barred by limitations except this one cause. During practically the whole of the period this suit was pending in district court up to and after the time of the trial court's overruling the defendant's motion to dismiss at the second trial of the case, it could have been settled for the $10,000, the limit of defendant's insurance. The insured at all times demanded the settlement. The matter of negotiation and settlement was, as provided by the policy, in the exclusive hands of the defendant insurance company herein. It neither accepted the offer for settlement of the claim for the full amount of its policy limits nor, explored the possibility of a lesser settlement by counter negotiation. Its negotiation consisted of one word "no," except on one occasion on which it refused to answer at all and didn't inform its insured that an offer was made at that time. After the last judgment for $50,000 and before the appeal therefrom by Shellington to this court, the company which had reassured the defendant for all loss over $5,000, plus half of the cost, suggested there might still be a settlement affected and advised it should be attempted. The reinsurer pointed out in its letter that more than a year and a half before the expense of litigation had then exceeded $4,300, and that the ensuing expense had no doubt considerably augmented that amount. The defendant's vice president made no attempt to settle until after the judgment of $50,000 was pending on appeal to this court and then according to him because of the suggestion of the co-insurer only. Defendant's vice president to my mind in his testimony considered the continuation of the litigation to be a matter of principle and gave little thought to the rights of the assured, the extent of the damage, nor the amount of the expense.

There is to my mind clearly sufficient evidence of

bad faith on the part of the defendant to authorize the issue to be submitted to the jury.

I am authorized to state Judge Spencer concurs in this dissent.