SHIRLEY CHRISTENSEN, APPELLEE, V. CITY OF TEKAMAH, A MUNICIPAL CORPORATION, ET AL., APPELLANT, IMPLEADED WITH CHICAGO AND NORTHWESTERN TRANSPORTATION COMPANY, A CORPORATION, APPELLEE.

268 N. W. 2d 93

Filed July 12, 1978. No. 41486.

Harry L. Welch and Harold W. Kauffman of Gross, Welch, Vinardi, Kauffman & Day, for appellant.

Mark L. Laughlin and John D. Sykora of Marer, Venteicher, Strasheim, Seidler, Laughlin, Lazer & Murray, for appellee Christensen.

Heard before SPENCER, BOSLAUGH, and WHITE, JJ., and RIST and KELLY, LLOYD W., District Judges.

PER CURIAM.

This is an action brought by the plaintiff-appellee for damages sustained as a result of an automobile accident at a railroad crossing in Tekamah. The plaintiff was traveling east on "G" Street in Tekamah when her automobile stopped abruptly on the west edge of a railroad crossing. The lower portion of the frame or bumper of plaintiff's automobile apparently engaged itself with a rail of the Chicago and Northwestern Transportation Company, hereinafter referred to as the "Railroad." The plaintiff brought

action against the Railroad alleging negligence due to the protrusion of the rail and against the City of Tekamah, hereinafter referred to as "City," alleging negligence in the design and maintenance of the street approaching the railroad crossing. Plaintiff alleged two causes of action, one for property damage and personal injury and the other for the loss of consortium.

The action was tried before a jury; however, only the case of the Railroad was submitted to the jury. The Political Subdivisions Tort Claims Act, sections 23-2401 to 23-2420, R. R. S. 1943, provides that the issues as to the City be determined by the court. The jury returned a verdict for the plaintiff against the Railroad on both causes of action in the amount of $3,633. The court entered a judgment for the plaintiff against the City on both causes of action in the amount of $7,295.25. Only the City appeals from the judgment.

"G" Street runs east and west, intersecting 14th Street which runs north and south. Between 14th Street and the street immediately east of it, 13th Street or Main Street, three sets of tracks cross "G" Street. The west rail of the westernmost set of tracks is involved in this case. These rails are elevated above the surface of "G" Street. The public works director of Tekamah and the investigating officer at the accident, witnesses for the plaintiff, testified they estimated the rail elevation was ½ inch above the level of the street. Stanley Bales, a consulting engineer called by the plaintiff, testified the protrusion measured ¾ of an inch.

The distance from the center of 14th Street to the west rail of the track involved is 74 feet. An exhibit prepared by Bales, showing the gradient variance of this 74 feet of "G" Street, was received into evidence. This exhibit and the testimony of Bales show there is a 3.6 percent grade for the 10 feet from the center of 14th Street to the east curb thereof. There

is a 12.11 percent grade for the next 37 feet. The slope decreases slightly for the next 10 feet to a grade of 12 percent, but then increases during the subsequent 10 feet to a grade of 13.2 percent. Seven feet from the rail in issue, where there is a 3 percent grade, the slope levels off. There are no street signs giving notice to a driver of the design of the street.

The accident occurred on October 25, 1974. The weather was clear. The plaintiff was driving a 1975 automobile and there was no evidence that the automobile was not working properly. She admitted she was not using the available seat belts. The speed limit in this area of "G" Street is 25 miles per hour. The plaintiff had never driven this automobile on "G" Street in this area. Plaintiff, who suffered a brain concussion, remembers going down the slope on "G" Street. The automobile came to rest on the tracks. The crossmember of the automobile's frame was scraped from the impact. The frame of the car was bent so that both front wheels were pushed back directly against the tire well. The railroad track which had suffered the impact was scratched about 3 or 4 feet right of the center of "G" Street by plaintiff's automobile.

Ralph Renshaw, who was driving a tractor past the second railroad track approximately 200 feet east of the accident scene and facing "G" Street, witnessed the plaintiff approaching the tracks. He testified that she was traveling 18 to 20 miles per hour and braked from the top of the hill. He thought she braked as she came into the dip and when the automobile went into the dip, "it seemed to raise up on the front end and bottomed completely out on the railroad track. * * * It appeared to me that it stopped abruptly when it bottomed out."

Bales, the consulting engineer, testified that the average American automobile using the tracks would have approximately a 10-foot wheel base. A break in grade 7 feet from the crossing would result

in the rear wheels of the automobile being on a much higher level than the front wheels at the crossing. This would cause the front portion of the auto-moble overhanging the front wheels to point downward at the track. This is a problem when coupled with the tendency of a driver coming down a steep grade to apply the brakes. The driver brakes the automobile as he or she heads into the more level grade because the rails represent a visible rough spot. Bales testified that in his opinion, as an expert, the street was not maintained in a reasonably safe condition.

The defendant City offered no evidence to refute Bales' testimony. The City argues there was no negligence on its part, and, in the alternative, such negligence, if it existed, would be negated by the plaintiff's contributory negligence. The City asserts the plaintiff failed to have proper control of her vehicle and her failure to use available seat belts aggravated her injuries.

Section 23-2410, R. R. S. 1943, of the Political Subdivisions Tort Claims Act provides: "If any person suffers personal injury or loss of life, or damage to his property by means of insufficiency or want of repair of a highway or bridge or other public thoroughfare, which a political subdivision is liable to keep in repair, the person sustaining the loss or damage, or his personal representative, may recover in an action against the political subdivision, * * *."

The forerunner of section 23-2410, R. R. S. 1943, was section 39-834, R. R. S. 1943, which specifically mentioned counties as the only political subdivisions which could be liable for insufficiency or want of repair of a highway or bridge. Section 23-2410, R. R. S. 1943, adopted in 1969, extends the liability to all political subdivisions. Section 23-2411, R. R. S. 1943, expressly states that all prior case law which evolved from former section 39-834, R. R. S. 1943, shall be applicable in deciding cases governed by

section 23-2410, R. R. S. 1943. "In enacting section 23-2410, it is the intent of the Legislature that the liability of all political subdivisions based on the alleged insufficiency or want of repair of any highway or bridge or other public thoroughfare shall be the same liability that previously has been imposed upon counties pursuant to section 23-2410. The Legislature further declares that judicial interpretations of section 23-2410 governing the liability of counties on January 1, 1970 also shall be controlling on the liability of all political subdivisions for the alleged insufficiency or want of repair of any highway or bridge or other public thoroughfare. Notwithstanding other provisions of this act, sections 23-2410 and 23-2411 shall be the only sections governing determination of liability of political subdivisions for the alleged insufficiency or want of repair of highways, or bridges or other public thoroughfares. As used in sections 23-2410 and 23-2411, public thoroughfares shall include all streets, alleys, and roads designed, intended, and primarily used for the movement of vehicular traffic and dedicated to public use." § 23-2411, R. R. S. 1943.

A review of cases decided under former section 39-834, R. R. S. 1943, where the issue was whether a county was negligent in the design and maintenance of a road, reveals that there has been no finding in any case of negligence on the part of a county. See, Olson v. County of Wayne, 157 Neb. 213, 59 N. W. 2d 400; McKinney v. County of Cass, 180 Neb. 685, 144 N. W. 2d 416; Brooks v. Thayer County, 126 Neb. 610, 254 N. W. 413; Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701; Dickenson v. County of Cheyenne, 146 Neb. 36, 18 N. W. 2d 559; Clouse v. County of Dawson, 161 Neb. 544, 74 N. W. 2d 67. This court has held that a county is not an insurer of the safety of travelers on its roads, but must use reasonable and ordinary care in the construction, maintenance, and repair of its highways and bridges so that they

will be reasonably safe for a traveler using them while he is in the exercise of reasonable and ordinary caution and prudence. See Olson v. County of Wayne, *supra.*

The general rule is that the character and extent of unevenness or other inequalities in the surface of a highway or street, as well as the surrounding circumstances, determine whether such inequalities constitute actionable defects. The test ordinarily is whether the inequalities are of such magnitude or extent as to be likely to cause injury to travelers who are proceeding with due care. The public authority is not liable for a failure to remedy trivial irregularities, slight depressions, or other minor inequalities in the surface of the highway. See 39 Am. Jur. 2d, Highways, Streets, and Bridges, § 486, p. 881. Nebraska has followed this rule. In Hupfer v. City of North Platte, 134 Neb. 585, 279 N. W. 168, we said: " 'Holes, ruts, or depressions in the street or sidewalk may give rise to a right of action for injuries caused thereby if they are of such a nature that danger therefrom might reasonably be anticipated. But slight holes or depressions which are not in the nature of traps, and from which danger could not reasonably be anticipated, are not defects for which an action will lie." See, also, Hilker v. N. P. Dodge Building Co., 184 Neb. 495, 168 N. W. 2d 701.

The question we must determine is whether the slope of the street and protrusion of the railroad track are irregularities of such a substantial degree that the city should reasonably have anticipated that they presented a dangerous condition. The evidence shows the rail to project from ½ to ¾ inch above street level. The grade of the street approaching the rail goes from about a 13 percent downgrade to a 3 percent downgrade approximately 7 feet from the rail. The wheelbase of the car is 10 feet; the lowest front portion of the frame is approximately 8 inches above street level. Exhibit No. 6, a photograph

which was taken after the accident and after the plaintiff's automobile had been repaired, shows the plaintiff's automobile sitting at the accident scene. The photograph shows ample clearance by the automobile of the rail notwithstanding the slope involved.

In an action to recover damages from a political subdivision by virtue of the statute, the burden is on the plaintiff to establish negligence of the subdivision and that its negligent act was the proximate cause of the injury to the plaintiff or that it was a cause that proximately contributed to it. See, Olson v. County of Wayne, *supra*; Wittwer v. County of Richardson, 153 Neb. 200, 43 N. W. 2d 505; Bowerman v. Greenberg, 142 Neb. 721, 7 N. W. 2d 711. The only evidence in the record which affords any basis for the negligence of the City is that of the consulting engineer. He expressed the opinion that the change in grade of the street and the condition of the track were not reasonably safe.

The evidence of the engineer is clearly admissible. See § 27-702, R. R. S. 1943. Expert testimony is permitted even in areas where laymen have competence to determine the facts testified to by the expert where a trial court may feel the opinion would assist them. However, the trier of fact is not bound by the testimony of an expert witness. Here, we believe the facts are capable of proper consideration by laymen. The expert's opinion has little weight when measured against the other evidence in this case. The particular evidence we feel to be most relevant is the factual showing that the clearance above the track by the body of the car is considerable, even though the car is on the slope described by the expert.

On appeal of an action under the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed unless clearly wrong. See Naber v. City of Humboldt, 197 Neb. 433, 249 N. W. 2d 726. The decision of the District Court is not supported by the evidence. The evidence shows a slight

protrusion of the railroad track of ½ inch to ¾ inch and a 10 percent variance in the roadway approaching the track. These are minor irregularities and the defendant City could not reasonably anticipate that such conditions could be injurious. To predicate the negligence of a city upon such minor irregularities in roadway conditions would be to make the city of insurer of the safety of travelers on its streets.

The judgment of the District Court against the City is reversed and the cause of action is dismissed.

REVERSED AND DISMISSED.