VICKIE L. HENDRICKSON, FORMERLY
VICKIE L. PUGLIESE, APPELLANT AND
CROSS-APPELLEE, V. CITY OF KEARNEY, NEBRASKA,
APPELLEE AND CROSS-APPELLANT.

312 N.W.2d 677

Filed November 20, 1981. No. 43491.

John T. Tarrell of Tarrell & Alexander and Donald J. Loftus, P.C., for appellant.

Marmion F. Yeagley and Kenneth F. George of State & Yeagley and Michael E. Kelley for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

This is an action for damages against the City of Kearney, Nebraska, under the Political Subdivisions Tort Claims Act arising out of an automobile accident on a railway overpass. At the conclusion of the plaintiff's evidence the District Court sustained defendant's motion to dismiss and the plaintiff has appealed.

At about 10:30 a.m. on January 17, 1977, the 24-year-old plaintiff was driving a Jeep pickup over an elevated railroad overpass which is on 2nd Avenue and Highways 10 and 44 in the City of Kearney. Plaintiff's vehicle slid on the surface of the overpass, spun out of control, crossed the concrete median, and struck another motor vehicle going in the opposite direction. The plaintiff sustained very severe personal injuries.

The weather at the time was misty and the condition of the surface of the overpass was the same as on the other streets of Kearney. Most witnesses testified that the surface of the overpass was wet, but not icy. Two described it as icy. None of the witnesses had any trouble controlling their vehicles and none of them slipped or slid. All witnesses who drove over the overpass that morning did so without incident.

The testimony was uncontradicted that the City monitors all the streets by visual inspection and by driving over them, and that during periods of bad weather there was more frequent monitoring and special attention was given to high traffic areas, including the overpass. There was also testimony that there had been no accidents on the overpass other than the one involving the plaintiff over a period of many years.

There were signs on the approaches at both ends of the overpass which stated: "Bridges may be icy."

The signs have been in place for at least 14 years. The City of Kearney has maintained the roadway surface of the overpass for many years under a contract with the State Department of Roads. The contract specifically provides: "Maintenance that may be required by 'Acts of God' — are not covered by this agreement but shall be performed under special agreement in each specific case."

Neb. Rev. Stat. § 39-1339 (Reissue 1978), incorporated in the contract by reference, provides that in contracts such as this maintenance shall be limited to such things as are caused either by wear and tear of travel or by acts of God, but shall not be construed to include snow removal or repairs or reconstruction going beyond the scope of normal surface maintenance or normal wear and tear of travel.

The public works director for the City of Kearney testified that for all the years in which he had been associated with the City of Kearney, maintenance of the overpass by the City had included treating the overpass for icy or slick conditions, and that the City had been applying sand to treat icy or slick conditions on the overpass for many years. The evidence also established that the City of Kearney had loaded two trucks with sand the night before the accident and that sand was applied to the surface of the overpass after the accident involved in this case occurred.

At the conclusion of plaintiff's evidence the District Court sustained defendant's motion to dismiss for the reason that "neither the common law nor the statutes impose any duty upon the City to either remove snow on public streets or to treat its streets for icy conditions and that in the absence of such duty, any failure of performance does not constitute negligence." The court dismissed plaintiff's petition and plaintiff has appealed.

Under the Political Subdivisions Tort Claims Act if any person suffers personal injury, loss of life, or damage to property by means of insufficiency or

want of repair of a highway or bridge or other public thoroughfare which a political subdivision is liable to keep in repair, he may recover in an action against the political subdivision. See Neb. Rev. Stat. § 23-2410 (Reissue 1977).

Neb. Rev. Stat. § 23-2411 (Reissue 1977) provides that in enacting § 23-2410 it was the intent of the Legislature that the liability of all political subdivisions based on the insufficiency or want of repair of a highway or bridge or other public thoroughfare shall be the same liability that had been imposed upon counties pursuant to § 23-2410 (previously Neb. Rev. Stat. § 39-834 (Reissue 1968)).

The Legislature also declared in § 23-2411 that judicial interpretations governing the liability of counties on January 1, 1970, shall be controlling on the liability of all political subdivisions for the alleged insufficiency or want of repair of any highway or bridge or other public thoroughfare. The section also provides that §§ 23-2410 and 23-2411 shall be the only sections governing determination of liability of political subdivisions for the alleged insufficiency or want of repair of highways or bridges or other public thoroughfares, and provides that public thoroughfares shall include all streets, alleys, and roads designed, intended, and primarily used for the movement of vehicular traffic and dedicated to public use.

Provisions similar to those of § 23-2411 are also incorporated into the State Tort Claims Act. See Neb. Rev. Stat. § 81-8,219(2) (Reissue 1976). The critical language referring to damage "by means of insufficiency or want of repair of a highway or bridge" is identical in the Tort Claims Act to the language in the former § 39-834.

This court repeatedly held prior to 1970 that under that language a county was obligated to use reasonable and ordinary care in the construction, maintenance, and repair of its highways and bridges so that they will be reasonably safe for the traveler using them

while he is in the exercise of reasonable and ordinary caution and prudence. *Olson v. County of Wayne,* 157 Neb. 213, 59 N.W.2d 400 (1953); *McKinney v. County of Cass,* 180 Neb. 685, 144 N.W.2d 416 (1966). The same duty has now been imposed under the State Tort Claims Act and under the Political Subdivisions Tort Claims Act. See, *Richardson & Gillispie v. State,* 200 Neb. 225, 263 N.W.2d 442 (1978); *Christensen v. City of Tekamah,* 201 Neb. 344, 268 N.W.2d 93 (1978); *Hansmann v. County of Gosper,* 207 Neb. 659, 300 N.W.2d 807 (1981).

In the case now before us the action was dismissed at the conclusion of the plaintiff's case. The only reason for dismissal stated by the court was that neither the common law nor the statutes impose any duty upon a first-class city to remove snow on public streets or to treat its streets for icy conditions. The stated reason for dismissal holds that there is never any duty upon a first-class city to remove snow on public streets or to treat its streets for icy conditions under any conceivable set of factual circumstances or conditions, and that consequently no failure of performance can constitute negligence. That rule is too broad. We cannot say that there are never any factual circumstances which may impose a duty upon a first-class city to remove snow or to treat its streets for icy conditions, at least where the evidence is undisputed that the city has assumed such responsibilities in the past. Nevertheless, in the present case there is insufficient evidence of negligence on the part of the City, even if it be assumed that the City had a general duty to use reasonable and ordinary care in treating its streets for icy conditions.

Under the tort claims acts the District Court, sitting without a jury, has exclusive jurisdiction to hear, determine, and render judgment on any tort claim covered by the acts and is the fact finder as well.

Under such circumstances, the fact that the trial court stated only an incorrect reason for reaching

the correct result is not reversible error. This court has consistently held that where a correct judgment or order has been made, the mere fact that it contains erroneous declarations of law does not require reversal. See *Lux v. Mental Health Board of Polk County*, 202 Neb. 106, 274 N.W.2d 141 (1979).

The trial court correctly dismissed the plaintiff's petition and the judgment of the District Court is affirmed.

AFFIRMED.

CLINTON, J., concurring in the result only.

I concur in the result only and disagree insofar as the majority opinion implies a subdivision of government may be liable for conditions resulting solely from the weather. The liability of a subdivision for injuries or damages caused by the condition of roads and bridges is measured by the terms of the statute, Neb. Rev. Stat. § 23-2411 (Reissue 1977) and § 81-8,219(2) (Reissue 1976), and it has no liability beyond that. The terms "insufficiency" or "want of repair" do not embrace conditions resulting naturally from weather and climate such as rain, snow, and ice unaffected by any act of the subdivision. I can find no precedent which supports the position that subdivisions may be liable because a road or street is icy or dangerous solely as a consequence of natural conditions. Slippery conditions may cover large areas or may be isolated and spotty. To make the subdivision liable in these circumstances is to make it an insurer. Dicta of this court indicate that the subdivision is not liable for "climatic conditions" beyond its control. *Stevens v. County of Dawson*, 172 Neb. 585, 111 N.W.2d 220 (1961).